JUDGE OETKEN

15 CV 02514

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TROY HUNG, Individually and on Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>     v.<br><br>IDREAMSKY TECHNOLOGY LIMITED, MICHAEL XIANGYU CHEN, JUN ZOU, ANFERNEE SONG GUAN, JEFFREY LYNDON KO, STEVEN XIAOYI MA, ERHAI LIU, MINGYAO WANG, DAVID YUAN, CREDIT SUISSE SECURITIES (USA) LLC, J.P. MORGAN SECURITIES LLC, STIFEL, NICOLAUS & COMPANY, INCORPORATED, and PIPER JAFFRAY & CO.,<br><br>                Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |



RECEIVED
APR 0 2 2015
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiff Troy Hung ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by iDreamSky Technology Limited ("iDreamSky" or the "Company"), with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by iDreamSky; and (c) review of other publicly available information concerning iDreamSky.

## NATURE OF THE ACTION AND OVERVIEW

1.     This is a class action on behalf of persons or entities who purchased or otherwise acquired iDreamSky American Depositary Shares ("ADSs"): (1) pursuant and/or traceable to the Company's Registration Statement and Prospectus (collectively, the "Registration Statement") issued in connection with the Company's initial public offering on or about August 7, 2014 (the "IPO" or the "Offering"); and/or (2) on the open market between August 8, 2014 and March 13, 2015, inclusive (the "Class Period").  Plaintiff seeks to pursue remedies under the Securities Act of 1933 (the "Securities Act") and under the Securities Exchange Act of 1934 (the "Exchange Act").

2.     iDreamSky is purportedly the largest independent mobile game publishing platform in China based on the number of active users in 2013, according to Analysys International, an independent market research firm.  International mobile game developers grant the Company access to the source codes of their games, purportedly allowing for greater control and efficiency in redesigning their games for the China market.  The Company distributes these games through both its proprietary distribution channels and third-party channels, such as app

stores and device pre-installations.  The Company also operates games as a service, where the Company offers live game services and gains user insights through its multi-dimensional data analysis engine to drive ongoing game optimization and monetization.

3.       On August 7, 2014, iDreamSky priced its IPO of 7,700,000 American depositary shares ("ADS"), with each ADS representing four Class A ordinary shares of the Company, at a price of $15.00 per ADS, exclusive of the underwriters' exercise of their over-allotment option to purchase 1,155,000 additional ADSs.

4.       On March 13, 2015, after the market closed, the Company lowered its revenue guidance for the fourth quarter of 2014 to be between RMB327.0 million (USD $52.7 million) and RMB329.0 million (USD $53.0 million), as compared to the previously announced revenue guidance of between RMB390.0 million (USD $62.9 million) and RMB410.0 million (USD $66.1 million).  According to the Company, the revised guidance reflected the delay of a popular game, launched on one of the Company distribution platforms, and lower than expected revenues from another game being launched simultaneously as other hit games on the same distribution platform.

5.       On this news, ADSs of iDreamSky declined $3.60 per share, over 33%, during to close on March 16, 2015 at $7.22 per share, on unusually heavy volume.

6.       Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (1) that the Company had overstated its ability to monetize its user base and effectively integrate its distribution channels; (2) that, as a result, the Company had to lower its earnings guidance; and (3) that, as a result of the foregoing, the Company's statements about

its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis.

7.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.     The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o), and Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 22 of the Securities Act (15 U.S.C. § 77v), and Section 27 of the Exchange Act (15 U.S.C. §78aa).

10.     Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(b) and Section 27 of the Exchange Act (15 U.S.C. §78aa(c)).   A significant portion of Defendants' actions, and the subsequent damages, took place in this Judicial District.

11.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

12.     Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased iDreamSky ADSs during the Class Period, pursuant and/or traceable to the

Registration Statement issued in connection with the Company's IPO, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

13.     Defendant iDreamSky is a China corporation with its principal executive offices located at 16/F, A3 Building, Kexing Science Park, 15 Keyuan Road North, Nanshan District, Shenzhen, Guangdong, 518057, People's Republic of China.

14.     Defendant Michael Xiangyu Chen ("Chen") was, at all relevant times, Chief Executive Officer ("CEO") and a director of iDreamSky.

15.     Defendant Jun Zou ("Zou") was, at all relevant times, Chief Fiancial Officer ("CFO") of iDreamSky.

16.     Defendant Anfernee Song Guan ("Guan") was, at all relevant times, a director of iDreamSky and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

17.     Defendant Jeffrey Lyndon Ko ("Ko") was, at all relevant times, a director of iDreamSky and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

18.     Defendant Erhai Liu ("Liu") was, at all relevant times, a director of iDreamSky and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

19.     Defendant Steven Xiaoyi Ma ("Ma") was, at all relevant times, a director of iDreamSky, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

20.     Defendant Mingyao Wang ("Wang") was, at all relevant times, a director of iDreamSky, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

21.     Defendant David Yuan ("Yuan") was, at all relevant times, a director of iDreamSky and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

22.     Defendants Chen and Zuo are collectively referred to hereinafter as the "Individual Defendants."   The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of iDreamSky's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.   Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.   Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.   The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

23.     Defendants Chen, Zuo, Guan, Ko, Ma, Liu, Wang, and Yuan are collectively referred to hereinafter as the "Section 11 Individual Defendants."

24.     Defendant Credit Suisse Securities (USA) LLC ("Credit Suisse") served as an underwriter and joint book-running manager of the Company's IPO.   In the Offering, Credit

Suisse agreed to purchase 3,272,500 ADSs of the Company, exclusive of the over-allotment option.

25.     Defendant J.P. Morgan Securities LLC ("J.P. Morgan") served as an underwriter and joint book-running manager of the Company's IPO.  In the Offering, J.P. Morgan agreed to purchase 3,272,500 ADSs of the Company, exclusive of the over-allotment option.

26.     Defendant Stifel, Nicolaus & Company, Incorporated ("Stifel Nicolaus") served as an underwriter and joint book-running manager of the Company's IPO.  In the Offering, Stifel Nicolaus agreed to purchase 770,000 ADSs of the Company, exclusive of the over-allotment option.

27.     Defendant Piper Jaffray & Co. ("Piper Jaffray") served as an underwriter and joint book-running manager of the Company's IPO.  In the Offering, Piper Jaffray agreed to purchase 385,000 ADSs of the Company, exclusive of the over-allotment option.

28.     Defendants Credit Suisse, J.P. Morgan, Stifel Nicolaus, and Piper Jaffray, are collectively referred to hereinafter as the "Underwriter Defendants."

29.     The Company, the Section 11 Individual Defendants, and the Underwriter Defendants, are collectively referred to hereinafter as the "Section 11 Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

30.     iDreamSky is purportedly the largest independent mobile game publishing platform in China based on the number of active users in 2013, according to Analysys International, an independent market research firm.  International mobile game developers grant the Company access to the source codes of their games, purportedly allowing for greater control and efficiency in redesigning their games for the China market.  The Company distributes these

games through both its proprietary distribution channels and third-party channels, such as app stores and device pre-installations. The Company also operates games as a service, where the Company offers live game services and gains user insights through its multi-dimensional data analysis engine to drive ongoing game optimization and monetization.

31.     On August 7, 2014, the SEC declared effective the Form F-1 that iDreamSky filed on July 3, 2014 and repeatedly amended, until on or about August 1, 2014, when the Company filed with the SEC the final Form F-1/A (collectively, the "Registration Statement") for the IPO.

32.     On August 7, 2014, iDreamSky priced its IPO of 7,700,000 American depositary shares ("ADS"), with each ADS representing four Class A ordinary shares of the Company, at a price of $15.00 per ADS, exclusive of the underwriters' exercise of their over-allotment option to purchase 1,155,000 additional ADSs. According to the Company, the total proceeds to the Company before discretionary incentive fees and expenses was USD $107,415,000 after deducting an estimated USD $8,085,000 underwriting discounts and commissions.

33.     According to the Company, upon the completion of the Offering and the sale of Class A ordinary shares to THL A19 Limited, Cheetah Mobile Inc. and LINE Corporation in connection with concurrent private placements, 87,846,633 Class A ordinary shares and 81,446,120 Class B ordinary shares of the Company would be issued and outstanding.

**Materially False and Misleading
Statements Issued During the Class Period**

34.     The Class Period begins on August 7, 2014. On or about this day, the Company filed with the SEC its IPO Prospectus (the "Prospectus"), which forms part of the Registration Statement. Under applicable SEC rules and regulations, the Registration Statement was required to disclose known trends, events or uncertainties that were having, and were reasonably likely to have, an impact on the Company's continuing operations.

35.     With respect to the Company's competitive strengths, the Registration Statement stated, in relevant part:

> The key competitive strengths of China's mobile game publishing platforms include the abilities to: (i) obtain high quality game content, including major hit game titles, (ii) retain and grow a large and active user base, (iii) monetize the user base and (iv) integrate and penetrate into distribution channels.

*          *          *

> **Our Strengths**
>
> We believe that the following strengths have been critical to our success and differentiate us from our competitors:
>
> - large, fast-growing, active and loyal user base;
>
> - sophisticated game operation capabilities resulting in effective user engagement, retention and monetization;
>
> - high-quality and diversified game portfolio;
>
> - strong and trusted partnerships with game developers;
>
> - unique and effective proprietary distribution channels;
>
> - advanced technology infrastructure and data analysis capabilities; and
>
> - visionary and experienced senior management.

36.     The Registration Statement also stated, in relevant part:

> We are the largest independent mobile game publishing platform in China based on the number of active users in 2013, according to the Analysys Report. In the first quarter of 2014, we had average MAUs of 98.3 million. We redesign and optimize third-party games and deliver them to users through our proprietary distribution channels as part of our broader publishing solution. We also selectively acquire and develop certain games to obtain games for our portfolio on more favorable commercial terms. Our proprietary distribution channels include in-game cross promotions and our self-operated iDreamSky Game Center and www.uu.cc. We also operate games as a service, where we offer live game services and gain user insights through our multi-dimensional data analysis engine to drive ongoing game optimization and monetization. We currently offer 40 casual and mid- and hardcore mobile games of various genres.

Our platform offers a one-stop solution, including game redesign and porting, ongoing optimization, marketing, distribution, monetization, payment support and user-related services. In addition to our proprietary distribution channels, we also partner with major app stores and mobile browsers in China, such as Tencent App Store, Qihoo 360 Mobile, 91 Wireless and UCWeb, mobile device makers and retailers such as Lenovo, Huawei, ZTE and Suning, mobile carriers and mobile advertising agents to distribute our games. We also partner with almost all major payment service providers in China, including all three mobile carriers and major third-party payment service providers such as Alipay, Weixin Payments, China UnionPay and Yeepay.

37.     On November 25, 2014, the Company issued a press release entitled, "iDreamSky Reports Third Quarter 2014 Unaudited Financial Results." Therein, the Company, in relevant part, stated:

iDreamSky Technology Limited ("iDreamSky" or the "Company") (Nasdaq:DSKY), China's leading independent mobile game publishing platform, today reported unaudited financial results for the third quarter of 2014. The Company will host a conference call to discuss the results at 8:00 a.m. EST (or 9:00 p.m. Beijing/Hong Kong Time) on November 25, 2014.

**Quarterly Highlights**

- Total revenues were RMB294.5 million (US$48.0 million1), up 276.2% from the same quarter last year, and up 57.3% sequentially.
- Gross profit was RMB123.2 million (US$20.1 million), up 332.0% from the same quarter last year, and up 53.3% sequentially.
- Net income was RMB37.4 million (US$6.1 million), up 235.1% from the same quarter of 2013, and up from a net loss of RMB116.4 million last quarter.
- Non-GAAP adjusted net income2 was RMB56.8 million (US$9.3 million), up 401.6% from the same quarter last year, and up 75.1% sequentially.
- Average monthly active users ("MAUs") were 122.0 million, an increase of 27.7% from last quarter.
- Average monthly paying users ("MPUs") were 7.4 million, an increase of 42.3% from last quarter.

"We are pleased to report solid top and bottom line growth in our first earnings results as a public company," commented Mr. Michael Chen, Chief Executive Officer of iDreamSky. "Revenue increased 276.2% year-over-year as we diversified our portfolio with the launch of more than ten new games and expanded our pipeline by entering into strategic cooperation agreements with globally renowned content providers such as Disney, Halfbrick and Kiloo.

CLASS ACTION COMPLAINT

Growth in overall traffic continued, demonstrating the effectiveness of the enhancements we made to our platform services, as well as the effectiveness of our strategy of diversifying our portfolio and pipeline in order to attract and retain players. Our strength in big data and user behavior analysis is an important advantage that helps us better monetize our user base and identify user trends. The launch of Fruit Ninja for Tencent also marks an important milestone for us as we leverage these strengths to transform from 'made by iDreamSky' to 'designed by iDreamSky.' We maintained our position as China's leading independent mobile game publishing platform during the quarter and eagerly look forward to releasing more hit games and developing deeper relationships with content providers as a part of our goal to create sustainable value for our shareholders over the long term."

Mr. Jun Zou, Chief Financial Officer of iDreamSky added, "Non-GAAP net income during the quarter reached a record US$9.3 million, which is more than the Company's entire non-GAAP net income from last year. User paying ratio increased to 6.1% from 5.6% during the same period last year. We are confident that we can continue to drive growth by the following: first, increasing our relatively small paying users base; second, driving our ARPPU up which is relatively low at RMB13.2 (US$2.2) per month in the third quarter of 2014; and third, building more strategic relationships with domestic and global content providers which will give us a strong pipeline of new games next quarter and well into 2015. We will also continue to invest in strengthening our game and platform research and development capabilities, data analysis and targeted marketing."

*       *       *

**Monetization**

- Average MPUs were 7.4 million, up 60.9% from 4.6 million in the third quarter of 2013 and 42.3% from 5.2 million in the second quarter of 2014.
- ARPPU was RMB13.2 (US$2.2), up 132.4% from RMB5.7 in the third quarter of 2013 and up 10.5% from RMB12.0 in the second quarter of 2014.
- The paying ratio of the Company's players was 6.1%, up from 5.6% in the third quarter of 2013 and 5.5% in the second quarter of 2014.

The year-over-year and sequential increases in these metrics were primarily due to the Company's effective monetization strategies as well as its enhanced game portfolio. The popularity of both the Company's existing and new games is a major factor for the enhanced monetization. The Company increased user spending by identifying and implementing new monetization points suitable for mobile users in China, optimizing its virtual goods merchandising strategy through data analysis, and maintaining user engagement.

38.   The statements contained in ¶¶31-37 were materially false and/or misleading when made because defendants failed to disclose or indicate the following: (1) that the Company had overstated its ability to monetize its user base and effectively integrate its distribution channels; (2) that, as a result, the Company had to lower its earnings guidance; and (3) that, as a result of the foregoing, the Company's statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis.

### Disclosures at the End of the Class Period

39.   On March 13, 2015, after the market closed, the Company issued a press release entitled, "iDreamSky Announces Updates to Fourth Quarter 2014 Guidance and US$20 Million Share Repurchase Program." Therein, the Company, in relevant part, stated:

> iDreamSky Technology Limited ("iDreamSky" or the "Company") (Nasdaq:DSKY), China's leading independent mobile game publishing platform, today announced updates to its previous revenue guidance for the fourth quarter of 2014 and a share repurchase program approved by the board of directors of the Company.
>
> The Company estimates its revenue guidance for the fourth quarter of 2014 to be between RMB327.0 million (US$52.7 million) and RMB329.0 million (US$53.0 million), as compared to the previously announced revenue guidance of between RMB390.0 million (US$62.9 million) and RMB410.0 million (US$66.1 million). This revised guidance represents an increase of between 189% and 191% on a year-over-year basis. The Company has revised its guidance mainly because, in the fourth quarter of 2014, the launch of a popular casual game was delayed on one of the Company distribution platforms, and the monetization of another popular casual game was less than expected due to the simultaneous launch of other hit games on the same distribution platform.
>
> In addition, for the fourth quarter of 2014, the Company currently estimates that net income will be between RMB28.0 million (US$4.5 million) and RMB30.0 million (US$4.8 million), representing an increase of between 70% and 82% on a year-over-year basis. Non-GAAP adjusted net income2 will be between RMB49.0 million (US$7.9 million) to RMB51.0 million (US$8.2 million), representing an increase of between 195% and 207% on a year-over-year basis.

As these selected estimated results are subject to the finalization of the Company's financial closing procedures, the Company's actual results may differ from its current estimates.

In the fourth quarter of 2014, revenues generated from mid- and hard-core games significantly increased, contributing to an increased average revenue per paying user, or ARPPU.

For the first quarter of 2015, the Company expects revenue of RMB340.0 million (US$54.8 million). This forecast is based on the Company's current view on its recent operational results, estimated performance of its games and general market conditions, which may fluctuate and are subject to change.

The board of directors of the Company has approved a share repurchase program whereby the Company is authorized to repurchase its outstanding American depositary shares (the "ADSs") representing its ordinary shares with an aggregate value of up to US$20 million over the next 12 months. The share repurchases may be effected on the open market at prevailing market prices and/or in negotiated transactions off the market from time to time as market conditions warrant and will be implemented in accordance with the Company's securities trading policy and applicable requirements of Rule 10b5-1 and Rule 10b-18 under the U.S. Securities Exchange Act of 1934, as amended, or other legally permissible ways in accordance with applicable rules and regulations. The Company expects to fund the share repurchase out of its existing cash balance. As of December 31, 2014, the Company had cash and cash equivalents of approximately RMB929.8 million (US$149.9 million).

"We remain confident in China's mobile game industry for the year 2015. We believe we will continue to maintain our leading position in the market based on the strength of our game portfolio and monetization strategy," commented Mr. Michael Chen, Chief Executive Officer of iDreamSky.

40.    On this news, ADSs of iDreamSky declined $3.60 per share, over 33%, during to close on March 16, 2015 at $7.22 per share, on unusually heavy volume.

## CLASS ACTION ALLEGATIONS

41.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all those who purchased or otherwise acquired iDreamSky ADSs: (1) pursuant and/or traceable to the Company's Registration Statement and Prospectus issued in connection with the Company's IPO on or about

August 7, 2014, seeking to pursue remedies under the Securities Act; and/or (2) on the open market between August 8, 2014 and March 13, 2015, inclusive, seeking to pursue remedies under the Exchange Act; and were damaged thereby (collectively, the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

42.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, iDreamSky's securities were actively traded on the Nasdaq Global Market (the "NASDAQ"). While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Millions of iDreamSky shares were traded publicly during the Class Period on the NASDAQ. Record owners and other members of the Class may be identified from records maintained by iDreamSky or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

43.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

44.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

45.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of iDreamSky; and

(c)     whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

46.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

<u>**UNDISCLOSED ADVERSE FACTS**</u>

47.     The market for iDreamSky's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, iDreamSky's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired iDreamSky's securities relying upon the integrity of the market price of the Company's securities and market information relating to iDreamSky, and have been damaged thereby.

48.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of iDreamSky's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements,

as set forth herein, not false and/or misleading.  Said statements and omissions were materially false and/or misleading in that they failed to disclose material adverse information and/or misrepresented the truth about iDreamSky's business, operations, and prospects as alleged herein.

49.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about iDreamSky's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## <u>LOSS CAUSATION</u>

50.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

51.     During the Class Period, Plaintiff and the Class purchased iDreamSky's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

52.     As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding iDreamSky, his/her control over, and/or receipt and/or modification of iDreamSky's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning iDreamSky, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE (FRAUD-ON-THE-MARKET DOCTRINE)

53.     The market for iDreamSky's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, iDreamSky's securities traded at artificially inflated prices during the Class Period. On September 8, 2014, the Company's stock closed at a Class Period high of $23.66 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of iDreamSky's securities and market information relating to iDreamSky, and have been damaged thereby.

54.     During the Class Period, the artificial inflation of iDreamSky's stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or

misleading statements about iDreamSky's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of iDreamSky and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

55. At all relevant times, the market for iDreamSky's securities was an efficient market for the following reasons, among others:

(a) iDreamSky stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b) As a regulated issuer, iDreamSky filed periodic public reports with the SEC and/or the NASDAQ;

(c) iDreamSky regularly communicated with public investors *via* established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d) iDreamSky was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

56.     As a result of the foregoing, the market for iDreamSky's securities promptly digested current information regarding iDreamSky from all publicly available sources and reflected such information in iDreamSky's stock price. Under these circumstances, all purchasers of iDreamSky's securities during the Class Period suffered similar injury through their purchase of iDreamSky's securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

57.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of iDreamSky who knew that the statement was false when made.

## FIRST CLAIM
### Violation of Section 11 of The Securities Act
### (Against the Section 11 Defendants)

58.     Plaintiff repeats and realleges each and every allegation set forth above, except any allegation of fraud, recklessness or intentional misconduct.

59.     This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against the Section 11 Defendants.

60.     The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

61.     iDreamSky is the registrant for the IPO.  The Section 11 Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

62.     As issuer of the shares, iDreamSky is strictly liable to Plaintiff and the Class for the misstatements and omissions.

63.     None of the Section 11 Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

64.     By reasons of the conduct herein alleged, each Section 11 Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

65.     Plaintiff acquired iDreamSky shares pursuant and/or traceable to the Registration Statement for the IPO.

66.     Plaintiff and the Class have sustained damages.   The value of iDreamSky common stock has declined substantially subsequent to and due to the Section 11 Defendants' violations.

## SECOND CLAIM
### Violation of Section 15 of The Securities Act
### (Against the Section 11 Individual Defendants)

67.     Plaintiff repeats and realleges each and every allegation set forth above, except any allegation of fraud, recklessness or intentional misconduct.

68.     This count is asserted against the Section 11 Individual Defendants and is based upon Section 15 of the Securities Act.

69.     The Section 11 Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of iDreamSky within the meaning of Section 15 of the Securities Act.  The Section 11 Individual Defendants had the power and influence and exercised the same to cause iDreamSky to engage in the acts described herein.

70.     The Section 11 Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

71.     By virtue of the conduct alleged herein, the Section 11 Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

**THIRD CLAIM**
**Violation of Section 10(b) of**
**The Exchange Act and Rule 10b-5**
**Promulgated Thereunder Against the Company and the Individual Defendants**

72.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

73.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase iDreamSky's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

74.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for iDreamSky's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

75.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about iDreamSky's financial well-being and prospects, as specified herein.

76.     These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of iDreamSky's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about iDreamSky and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

77.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives

and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

78.     The defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing iDreamSky's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.   As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

79.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of

iDreamSky's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired iDreamSky's securities during the Class Period at artificially high prices and were damaged thereby.

80.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that iDreamSky was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their iDreamSky securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

81.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

82.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

### FOURTH CLAIM
### Violation of Section 20(a) of
### The Exchange Act Against the Individual Defendants

83.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

84.     The Individual Defendants acted as controlling persons of iDreamSky within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

85.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

86.     As set forth above, iDreamSky and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)    Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)    Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED:  April 2, 2015

GLANCY BINKOW & GOLDBERG LLP

By: _____

Gregory B. Linkh (glinkh@glancylaw.com)
Lesley F. Portnoy (lportnoy@glancylaw.com)
122 E 42nd Street, Suite 2920
New York, NY 10168
Telephone:  (212) 682-5340
Facsimile:   (212) 884-0988

Lionel Z. Glancy
Robert V. Prongay
Casey E. Sadler
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone:  (310) 201-9150
Facsimile:   (310) 201-9160

*Attorneys for Plaintiff*