UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
TROY HUNG, Individually and on Behalf of All :
Others Similarly Situated,                   :
                                  Plaintiffs,   :   <u>OPINION AND ORDER</u>
                                                :
                                    -v-           :   15-CV-2514 (JPO)
                                                :
IDREAMSKY TECHNOLOGY LIMITED, et al., :
                                          Defendants.   :
------------------------------------------------------------X
JAMES PATRICK GRIFFITH, Individually and :
on Behalf of All Others Similarly Situated, :
                                  Plaintiffs,   :
                                                :
                                  -v-           :   15-CV-2944 (JPO)
                                                :
IDREAMSKY TECHNOLOGY LIMITED, et al., :
                                          Defendants   :
------------------------------------------------------------X
ABRAHAM JEREMIAS, ROGER MARIANI, :
and MICHAEL RUBIN, Individually and on :
Behalf of All Others Similarly Situated, :
                                  Plaintiffs,   :
                                                :
                                  -v-           :   15-CV-3484 (JPO)
                                                :
IDREAMSKY TECHNOLOGY LIMITED, et al., :
                                          Defendants,   :
------------------------------------------------------------X
STEPHEN MANSOUR, Individually and on :
Behalf of All Others Similarly Situated, :
                                  Plaintiffs,   :
                                                :
                                -v-           :   15-CV-3794 (JPO)
                                                :
IDREAMSKY TECHNOLOGY LIMITED, et al., :
                                          Defendants,   :
-----------------------------------------------------------X

J. PAUL OETKEN, District Judge:

       These four cases are putative class actions brought against iDreamSky Technology Limited, its officers and directors, and four underwriters, relating to iDreamSky's initial public offering of American Depository Shares on the NASDAQ stock exchange. Before the Court are motions for consolidation and appointment of lead plaintiffs. One Plaintiff, Stephen Mansour,

also moves to remand his case to New York state court. For the reasons that follow, the motion to remand is denied, the motions to consolidate the cases are granted, and Melvyn Boey Kum Hoong is appointed lead plaintiff.

I.      **Motion to Remand**

As a threshold issue, the Court considers whether the Mansour case is properly part of this litigation. That action was filed in the Supreme Court of the State of New York, County of New York, on April 22, 2015, and removed to this Court on May 18, 2015. (No. 15-cv-3794, Dkt. No. 1.) Mansour now seeks remand back to state court.

The Mansour action alleges only violations of the Securities Act of 1933. 15 U.S.C. § 77a *et seq*. That Act is subject to a complicated removal scheme, the interpretation of which has divided federal and state courts. *See, e.g.*, *Plymouth Cty. Ret. Sys. v. Model N, Inc.*, No. 14-cv-04516, 2015 WL 65110, at *3 (N.D. Cal. Jan. 5, 2015) (collecting cases). As a general rule, cases falling within the court's federal question jurisdiction—such as this one—are removable under 28 U.S.C. §§ 1441 and 1446. The Securities Act, however, prohibits removal for cases arising under the Act "and brought in any State court of competent jurisdiction." 15 U.S.C. § 77v(a).

This bar on removal is subject to two exceptions. First, the Securities Act includes an explicit exception to the general prohibition on removal "as provided in section 77p(c)." As the Supreme Court has explained in considered dicta, "removal jurisdiction under subsection (c) is . . . restricted to . . . actions defined by subsection (b) [of section 77(p)]." *Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 643-44 (2006); *see, e.g.*, *Niitsoo v. Alpha Nat. Res., Inc.*, 902 F. Supp. 2d 797, 802-04 (S.D.W. Va. 2012). Section 77p(b), in turn, precludes certain securities class actions that are "based upon the statutory or common law of any State or subdivision thereof." 15 U.S.C. § 77p(b). Together, these provisions function to allow removal, followed by dismissal, of certain state class actions. *Kircher*, 547 U.S. at 642-44. Despite Defendants'

2

arguments to the contrary, this exception to the removal bar is not relevant to this despite, which concerns only federal securities claims. *See, e.g.*, *Niitsoo*, 902 F. Supp. 2d at 804 (rejecting attempts to distinguish *Kircher*); *W. Va. Laborers Tr. Fund v. STEC Inc.*, No. SACV 11-01171-JVS, 2011 WL 6156945, at *3-5 (C.D. Cal. Oct. 7, 2011) (reaching this conclusion); *cf. Knox v. Agria Corp.*, 613 F. Supp. 2d 419, 425 (S.D.N.Y. 2009) (explaining that *Kircher* is consistent with its reading of the second exception, without passing on the application of *Kircher* to this exception).

The second exception to the removal bar derives from the fact that the Securities Act prohibits removal from a "State court of competent jurisdiction." 15 U.S.C. § 77v(a). If a state court lacks jurisdiction over a Securities Act case, it is not a court of competent jurisdiction, so the removal bar does not apply and the usual federal removal statute does.

The parties dispute whether state courts have jurisdiction over Securities Act class actions like this one. Section 77v(a) of the Act grants concurrent federal and state jurisdiction over actions "brought to enforce any liability or duty created by" the Securities Act "except as provided in section 77p of [Title 15] with respect to covered class actions." 15 U.S.C. § 77v(a). Defendants argue that the language "except as provided in section 77p" refers to § 77p(f)(2), which defines "covered class actions" as lawsuits involving more than 50 persons with common questions of law or fact, or lawsuits brought on a representative basis. *Id.* § 77p(f). Under this reading, there is concurrent federal and state jurisdiction over individual Securities Act claims and certain group claims—such as a suit involving 30 persons—but not over "covered" Securities Act class claims. There is no dispute that the Mansour class action satisfies the definition of a covered class action in § 77p(f). Accordingly, under Defendants' interpretation, state courts lack jurisdiction over the case, so it is removable to federal court.

Mansour, in contrast, argues that the language "except as provided in section 77p" refers to the entirety of § 77p, primarily §§ 77p(b)-(c) precluding certain state-law class actions. Under

3

this reading, there is concurrent federal and state jurisdiction over Securities Act claims, except with respect to those state-law class actions removable under § 77p(c) and precluded by § 77p(b). By this interpretation, state courts have jurisdiction over Mansour's case, and it is not removable.

While the construction of § 77v(a) has split federal district courts, this Court concurs with those agreeing with the Defendants—including the other judges from this district. *See In re Fannie Mae 2008 Sec. Litig.*, No. 08–cv-7831, 2009 WL 4067266, at *2 (S.D.N.Y. Nov. 24, 2009); *Knox*, 613 F. Supp. 2d at 425; *see also Rubin v. Pixelplus Co.*, No. 06-cv-2964, 2007 WL 778485, at *5-6 (E.D.N.Y. Mar. 13, 2007). *Compare, e.g.*, *Wunsch v. Am. Realty Cap. Props.*, Civ. No. JFM-14-4007, 2015 WL 2183035 (D. Md. Apr. 14, 2015) (Motz, J.) (agreeing with *Knox*), *with Pac. Inv. Mgmt. Co. v. Am. Intern. Grp., Inc.*, No. SA CV 15-0687-DOC, 2015 WL 3631833, at *6 (C.D. Cal. June 10, 2015) (disagreeing with *Knox*). First, the Defendants have the better reading of the text. Defendants interpret "except as provided in section 77p with respect to covered class actions" to mean "except with respect to covered class actions, as defined in section 77p." The statutory language is amenable to this reading, and the phrase "covered class action" is a term of art with no meaning absent a reference to some definition. *Knox*, 613 F. Supp. 2d at 424. *But see Luther v. Countrywide Fin. Corp.*, 125 Cal. Rptr. 3d 716, 721 (Cal. Ct. App. 2011).

Mansour's parsing, meanwhile, runs afoul of the Supreme Court's decision in *Kircher*. Mansour interprets the "except" clause to strip state courts of jurisdiction over cases removable under § 77p(c). In *Kircher*, the Supreme Court said just the opposite. 547 U.S. at 646 ("[A] defendant can elect to leave a [removable] case where the plaintiff filed it and trust the state court (an equally competent body) to make the preclusion determination." (citation omitted)); *see* Lowenthal & Choe, *State Courts Lack Jurisdiction to Hear Securities Act Class Actions, But the Frequent Failure to Ask the Right Question Too Often Produces the Wrong Answer*, 17 U. Pa. J.

4

Bus. L. 739, 775 (2015). Mansour's interpretation would also create an inconsistency in the language of the Securities Act. *Niitsoo*, 902 F. Supp. 2d at 805. As noted above, the Act grants state courts jurisdiction over actions "created by" the Securities Act "except as provided in section 77p." According to Mansour, this language grants state courts jurisdiction over *federal* claims "except" for certain *state* claims. But state claims, of course, are not a subset of federal claims, excisable through an exception. *Id.* (finding the "created by" reference superfluous to avoid this inconsistency).

To reconcile the language in § 77v(a), Mansour argues that the reference to "this subchapter" is aimed at cases involving both federal and state claims. According to this argument, §§ 77p(b)-(c) allow removal and dismissal of cases involving certain state-law securities claims even if they also include federal claims. Congress was worried that the grant of concurrent jurisdiction, which (under Mansour's view) contains an exception for cases removable under § 77p(c), would be understood to exclude such mixed federal/state cases. So it left in the reference to claims "created by" the Securities Act to clarify that state courts retain jurisdiction over federal claims in cases that are removed via §§ 77p(b)-(c). *See In re Tyco Int'l, Ltd. Multidist. Litig.*, 322 F. Supp. 2d 116, 120 n.7 (D.N.H. 2004) (accepting this argument).

Though this reading is clever, it is also unconvincing. Prior to the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), § 77v(a) granted concurrent jurisdiction over all Securities Act claims. SLUSA added the exception "as provided in section 77p of this title with respect to covered class actions." Securities Litigation Uniform Standards Act of 1998, Pub. L. No. 105-353, Tit. I, § 101(a)(3). Mansour's reasoning, then, is that the Securities Act granted concurrent jurisdiction over cases involving Securities Act claims, so Congress added an exception to clarify that there is concurrent jurisdiction over cases involving Securities Act claims. That proposition is doubtful. *See Niitsoo*, 902 F. Supp. 2d at 806-07 ("I cannot understand why Congress would add an exception to a statute that already gave state courts

concurrent jurisdiction for the purpose of making it clear that state courts have concurrent jurisdiction); *see also Unschuld v. Tri-S Sec. Corp.*, No. 1:06-cv-2931, 2007 WL 2729011, at *7 n.9 (N.D. Ga. 2007) (J. Carnes, J.) ("[T]his Court doubts that [SLUSA's] drafters were exercising the forethought attributed to them by the court in *Tyco*.").

Finally, Mansour argues that it is unlikely that Congress would have stripped state courts of jurisdiction to hear federal class actions through an oblique reference to a definition. *See Niitsoo*, 902 F. Supp. 2d at 805 n.4 (accepting this argument); *see also*, *e.g.*, *King v. Burwell*, 135 S. Ct. 2480, 2495 (2015) ("Congress does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions." (citation and internal quotation marks omitted)). The text is inartfully drafted. But it would not be odd for Congress to draw a line between federal securities claims within and outside jurisdiction of state courts by pointing to a definition in another statutory provision.

Rather, Congress's purpose was relatively clear. As noted above, this language was added as part of SLUSA, which was intended to make "federal court the exclusive venue for class actions alleging fraud in the sale of certain covered securities." *Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101, 108 (2d Cir. 2001). That statute amended the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub. L. No. 104-67, which imposed a heightened pleading standard and other "stringent procedural hurdles" to deter "meritless class actions that allege fraud in the sales of securities." *Id.* at 107. Both of these objectives are accomplished through Defendants' reading of the Act. Mansour's reading, in contrast, produces an odd result. State-law class actions alleging securities fraud could be removed and dismissed. Federal-law securities class actions would encounter the PSLRA's procedural protections if filed in federal court. But federal-law securities class actions filed in state court would have to stay in state court and proceed without the PSLRA's protections. Taken together, the PSLRA and SLUSA would encourage plaintiffs to litigate federal securities class actions in state court, with lessened

procedural protections, and they would prohibit defendants from removing such cases to federal court. *See Romano v. Kazacos*, 609 F.3d 512, 517 (2d Cir. 2010) (explaining that the SLUSA was enacted "[i]n an effort to curb" the shift of federal securities fraud class actions to state court). This outcome is implausible given the purpose of the Acts in question.

Insofar as the legislative history is helpful, it also contains support for Defendants' view. *See* Lowenthal & Choe, *supra*, at 779-82. For example, SLUSA's preamble explains that the Act was passed after "considerable evidence" showing "that a number of securities class actions have shifted from Federal to State Courts . . . prevent[ing] the PSLRA from fully achieving its objectives." SLUSA § 2. The conference report explains that SLUSA "bars from State court . . . actions brought on behalf of more than 50 persons, actions brought on behalf of one or more unnamed parties, and so-called 'mass actions.'" H.R. Conf. Rep. 105-803, at 13 (1998). Mansour makes much of statements in the reports suggesting that SLUSA was focused on preventing state-law class actions, and that Congress intended federal courts as the "the exclusive venue for most"—so presumably not all—"securities fraud class action litigation involving nationally traded securities." *Id.* at 15; *see Parker v. Nat'l City Corp.*, No. 1:08 NC 70012, 2009 WL 9152972, at *7-8 (N.D. Ohio Feb. 12, 2009). Neither of the types of statements invoked by Mansour is inconsistent with Defendants' interpretation of SLUSA. SLUSA could and did remove state court jurisdiction of both federal and certain state covered class actions. This made federal court the exclusive venue for most class actions, but not all. Class actions that may still proceed in state court include those that fail to satisfy § 77p(f)'s definition of "covered class actions," state-law class actions not precluded by § 77p(b), and state-law class actions expressly preserved by § 77p(d), *see Madden v. Cowen & Co.*, 576 F.3d 957, 964 (9th Cir. 2009) ("Additionally, SLUSA contains a savings clause that preserves certain types of state-law claims that would otherwise be subject to its preclusion provision.").

In summary, the Court adopts Defendants' interpretation of § 77v(a), and New York state courts lack jurisdiction over this covered class action. Because the New York court is not a court of competent jurisdiction under §77v(a), the bar on removal does not apply, and the case is removable. The motion to remand is therefore denied.

## II.    Motion to Consolidate

Next, the Court considers whether the cases should be consolidated. *See* 15 U.S.C. §§ 77z-1(a)(3)(B)(ii), 78u-4(a)(3)(B)(ii) (requiring decisions on consolidation before selection of lead plaintiffs). Under Rule 42 of the Federal Rules of Civil Procedure, courts may consolidate cases "involv[ing] a common question of law or fact." Fed. R. Civ. P. 42(a); *see In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 435 (S.D.N.Y. 2008).

Each of the Complaints here seeks certification of a class action on behalf of purchasers of iDreamSky securities around the time of iDreamSky's IPO, generally from August 7, 2014, to mid-March 2015. The core of each concerns alleged misrepresentations by iDreamSky. The Complaints each allege violations of §§ 11 and 15 of the Securities Act, and all Plaintiffs but Mansour allege violations of §§ 10(b) and 20(a) of the Exchange Act and Rule 10b-5. Other than Mansour's request for a remand, the parties do not resist consolidation, nor do they identify any conflicts that might arise due to consolidation. Accordingly, the motions to consolidate are granted.

## III.    Motions for Appointment of Lead Plaintiffs and Lead Counsel

Though there are four cases, there are only two parties seeking appointment as lead plaintiff: Stephen Crane and the so-called iDream Group, consisting of six individuals. A group led by Abraham Jeremias withdrew its motion for appointment as lead plaintiff in favor of the iDream Group (No. 15-cv-2514, Dkt. No. 20), while Mansour filed his motion to remand without an alternative request for consolidation and appointment as lead plaintiff (No. 15-cv-3794, Dkt. No. 22). Insofar as Mansour asks the Court to delay deciding the motions to consolidate and to

appoint a lead plaintiff until sometime after deciding his motion to remand, that request is denied.

The PSLRA establishes a procedure for appointing a lead plaintiff in securities class actions. First, the plaintiff who filed the initial complaint must publish a notice informing class members of their right to move to be lead plaintiff within sixty days of the notice. 15 U.S.C. § 78u-4(a)(3)(A)(i). The Court then selects a lead plaintiff.

The PSLRA provides that:

> the court . . . shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter . . . referred to as the "most adequate plaintiff").

*Id.* § 78u–4(a)(3)(B)(i). To determine the "most adequate plaintiff,"

> the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that—(aa) has either filed the complaint or made a motion in response to a notice . . . , (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u–4(a)(3)(B)(iii)(I). This presumption "may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff—(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* § 78u–4(a)(3)(B)(iii)(II).

Crane concedes that the iDream Group has a larger financial interest in the case, but argues that appointing the group improperly aggregates the losses from multiple clients. The Court agrees. As the Court has explained elsewhere, the better reading of the PSLRA discourages appointment of joint lead plaintiffs to "avoid lawyer-driven litigation." Opinion and Order, *In re Ply Gem Holdings, Inc. Sec. Litig.*, No. 14-CV-3577 (S.D.N.Y. Oct. 14, 2014), ECF No. 36; *see, e.g.*, *Glauser v. EVCI Career Colls. Holding Corp.*, 236 F.R.D. 184, 190 (S.D.N.Y. 2006). A group might nonetheless merit appointment if that concern were obviated—for

example by evidence showing a prior relationship among the group members or showing that the group members "chose outside counsel, and not vice versa." *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392-93 (S.D.N.Y. 2008). But the iDream Group's joint declaration includes no such evidence. (No. 15-cv-2514, Dkt. No. 22-1.)

Considering the iDream Group members as individuals, one—Melvyn Boey Kum Hoong—has a financial interest greater than Crane's. Crane concedes this point. (*Id.*, Dkt. No. 23 at 4.) Hoong is willing to serve as lead plaintiff without the other iDream Group members. (*Id.*, Dkt. No. 22-1 ¶ 12.) Hoong also satisfies the requirements of Rule 23(a): his claims are typical of the class, and his interests are aligned with the other putative class members. *See Freudenberg v. E*Trade Fin . Corp.*, No. 07-cv-8538, 2008 WL 2876373, at *5 (S.D.N.Y. July 16, 2008) ("At this stage of the litigation, the moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met."). Accordingly, Hoong is presumptively the most adequate plaintiff.

Crane attempts to rebut this presumption by alleging a defect in Hoong's PSLRA certification. The PSLRA requires that "[e]ach plaintiff seeking to serve as a representative party on behalf of a class shall provide a sworn certification . . . stat[ing] that the plaintiff has reviewed the complaint and authorized its filing." 15 U.S.C. § 78u-4(a)(2). Hoong's certification, Crane notes, is dated March 18, 2015, yet the first complaint in this action was filed on April 2, 2015. Crane argues that Hoong cannot have reviewed a complaint and authorized its filing at the time he signed the certification, so his certification is false, and he cannot be entrusted to act as lead plaintiff and fiduciary for the class. (No. 15-cv-2514, Dkt. No. 23 at 9-12.) Hoong avers through a declaration, however, that, at the time of his certification, he "did authorize and review a draft complaint in this matter." (*Id.*, Dkt. No. 27-1 ¶ 2.) That complaint was not filed because another plaintiff filed a class action against iDreamSky, so Hoong instead

moved for appointment as lead plaintiff. (*Id.*)  Hoong says he has "reviewed that complaint as well." *Id.*

On these facts, Crane has offered insufficient evidence of a statutory violation or Hoong's dishonesty to rebut the presumption.  Accordingly, Hoong is named lead plaintiff.

The PSLRA delegates authority to select lead counsel to the lead plaintiff, subject to the Court's review.  15 U.S.C. § 78u-4(a)(3)(B)(v).  Hoong selects The Rosen Firm, P.A., and Glancy Prongay & Murray, LLP as co-lead counsel.  Having reviewed the firms and their experience with securities litigation, the Court is aware of no reason why these firms' appointment is contrary to the interests of the class.  Accordingly, Hoong's choice is approved, and The Rosen Firm, P.A., and Glancy Prongay & Murray, LLP are designated co-lead counsel.

## IV. Conclusion

In case number 15-cv-3794, the motion to remand (Dkt. No. 19) is DENIED.

In case number 15-cv-2514, the iDream Group's motion to consolidate cases is GRANTED, the motion to appoint lead counsel is GRANTED, and the motion to appoint lead plaintiff is GRANTED IN PART AND DENIED IN PART.  (Dkt. No. 18.)  Case numbers 15-cv-2514, 15-cv-2944, 15-cv-3484, and 15-cv-3794 are consolidated as "In re IDreamSky Technology Limited Securities Litigation" under the master docket number 15-cv-2514.  Melvyn Boey Kum Hoong is designated lead plaintiff, and The Rosen Firm, P.A., and Glancy Prongay & Murray, LLP are designated co-lead counsel.

The remaining motions to consolidate and appoint lead counsel are DENIED.  The request for judicial notice (No. 15-cv-2514, Dkt. No. 31) is DENIED as moot.

The parties are directed to meet and confer and, by February 9, 2016, submit a joint letter with a proposed schedule including dates for the filing of a consolidated complaint and the defendants' response.

The Clerk of Court is directed to close the motions at docket numbers 6, 15, 18, and 31 in 15-cv-2514, docket number 7 in 15-cv-2944, docket number 12 in 15-cv-3484, and docket numbers 11 and 19 in 15-cv-3794.

SO ORDERED.

Dated: January 25, 2016
New York, New York

_____
J. PAUL OETKEN
United States District Judge