UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------ X
                                                             :
                                                             :
                                                             :
                                                             :
IN RE IDREAMSKY TECHNOLOGY                                   :      15-CV-2514 (JPO)
LIMITED SECURITIES LITIGATION                                :
                                                             :      OPINION AND ORDER
                                                             :
                                                             :
                                                             :
------------------------------------------------------------ X
```

J. PAUL OETKEN, District Judge:

The Consolidated Amended Class Action Complaint ("Complaint") in this action was filed on March 25, 2016, by Plaintiffs[1] against iDreamSky Technology Limited ("IDS"), its officers and directors, and four underwriters (collectively, "Defendants"). (Dkt. No. 38 ("Compl.").) The Complaint alleges violations of Sections 11, 12 and 15 of the Securities Act, Sections 10(b) and 20(a) of the Exchange Act, and Rule 10b-5. Before the Court are two motions to dismiss, filed by IDS and by the four underwriter Defendants. (Dkt. No. 40; Dkt. No. 42.) For the reasons that follow, these motions are granted in part and denied in part.

**I.   Background**

The allegations in the Complaint relate to American Depository Shares ("ADSs") issued by IDS in an initial public offering ("IPO") on August 7, 2014. (Compl. ¶¶ 35-37.) In particular, Plaintiffs allege that IDS failed to disclose the adverse financial impact of delays in its release of the game Cookie Run in China and its lack of an adequate third-party billing platform.

---

[1] "Plaintiffs" refers to Lead Plaintiff Melvyn Boey Kum Hoong, and named plaintiffs Jets Holdings, Masoud Shemirani, Michael Rubin, and Roger Mariana, individually and on behalf of all others similarly situated.

IDS is a mobile game-publishing platform in China.  (*Id.* ¶ 27.)  Game developers grant IDS access to the source code of their games and IDS distributes the games through both proprietary and third-party distribution channels, and also offers "games as a service."  (*Id.*)

Cookie Run is a mobile game in which a gingerbread man must run, run, run as fast as he can in order to escape an oven's flames.  (*Id.* ¶ 29.)  Cookie Run is enormously popular in South Korea—the Complaint reports that it was downloaded on about half of all South Korean smartphones.  (*Id.*)

IDS sought to localize and distribute Cookie Run in China, with an expected release date in 2014.  (*Id.* ¶¶ 31, 38.)  In order to do so, IDS needed to acquire the necessary licenses and source code.  (*Id.* ¶ 32.)  However, the Complaint alleges that this process was rife with delay, due to disagreements with the Korean game developer.  (*Id.* ¶¶ 32-34.)

On August 7, 2014, IDS filed a Registration Statement and Prospectus with the Securities and Exchange Commission ("SEC") in connection with its initial public offering of 7,700,000 ADSs.  (*Id.* ¶¶ 34-35.)  Plaintiffs allege that the Registration Statement and Prospectus failed to disclose the risks resulting from delay in the Cookie Run launch and failed to include a general risk disclosure.  (*Id.* ¶¶ 45-46.)  Plaintiffs claim that IDS also failed to disclose risks relating to its third-party billing platform, which experienced frequent technical issues leading to IDS's inability to fully monetize its mobile games.  (*Id.* ¶¶ 42, 49.)  Plaintiffs also claim that statements made by a company officer in connection with the IPO and a press release issued on November 25, 2014, were misleading because the revenue guidance in the release incorporated projected revenues from Cookie Run even though IDS and its officers knew that the release of Cookie Run would be delayed.  (*Id.* ¶¶ 50-52.)

On March 13, 2015, IDS issued a press release revising its revenue guidance because "in the fourth quarter of 2014, the launch of a popular casual game was delayed." (*Id.* ¶ 54.)  And on March 23, 2015, IDS issued another press release announcing its 2014 earnings, which also confirmed that "revenue for the fourth quarter of 2014 was also negatively impacted as a result of a delay in the launch of Cookie Run due to that [*sic*] the Company received the source code of the game later than scheduled." (*Id.* ¶ 56.)  On an earnings conference call the same day, IDS confirmed that the Cookie Run launch delay was one of the reasons for the "shortfall on guidance" (*id.* ¶ 57), and also noted ongoing problems "due to the third party telecom carrier billing code issue" (*id.* ¶ 59).

Plaintiffs filed four putative class actions in this Court, naming as Defendants IDS, its officers and directors (the "Individual Defendants"), and four underwriters of IDS's IPO (the "Underwriter Defendants").  (Dkt. No. 1.)  The Court then consolidated these actions on January 25, 2016, designating Hoong as Lead Plaintiff, and the operative Consolidated Amended Class Action Complaint was filed on March 25, 2016.  (Dkt. No. 35; Dkt. No. 38.)  IDS and the Underwriter Defendants separately move to dismiss the claims against them.[2]  (*See* Dkt. No. 40; Dkt. No. 42.)

## II.    Legal Standard

"To survive a motion to dismiss, a complaint must plead enough facts to state a claim to relief that is plausible on its face." *Litwin v. Blackstone Group, L.P.*, 634 F.3d 706, 715 (2d Cir.

---

[2] Against IDS, Plaintiffs allege violations of Section 11 and Section 12(a)(1) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5.  Against the Underwriter Defendants, Plaintiffs allege violations of Section 12(a)(1) and 12(a)(2) of the Securities Act.  Plaintiffs also allege violations of Section 11 and Section 15 of the Securities Act against the Individual Defendants, and violations of Section 10(b) of the Exchange Act and Rule 10b-5 against the Individual Defendants who were officers of IDS.  The Individual Defendants have not moved to dismiss.

2011) (quoting *ECA & Local 134 IBEW Joint Pension Trust v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). For claims sounding in fraud, a plaintiff must satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires that "the circumstances constituting fraud . . . be stated with particularity." *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000). In considering a motion to dismiss, the court must "accept[] all factual allegations as true and draw[] all reasonable inferences in the plaintiff's favor." *Litwin*, 634 F.3d at 715.

Defendants move to dismiss Plaintiffs' claims under Sections 11, 12(a)(1), and 12(a)(2) of the Securities Act, and Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. Section 11 imposes strict liability on certain participants in a registered securities offering if "any part of the registration statement . . . contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a). Section 12(a)(2) imposes similar liability for misstatements or omissions in a prospectus. *Id.* § 77l(a)(2). And Section 12(a)(1) imposes similar liability on sellers of unregistered securities. *Id.* § 77l(a)(1). Section 10(b) of the Exchange Act and Rule 10b-5 impose liability where a defendant made omissions or misstatements of material fact, with scienter, in connection with the sale of securities. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 105 (2d Cir. 2007).

**III.    Discussion**

The Court first considers Plaintiffs' Securities Act claims and next considers Plaintiffs' Exchange Act claims.³

   **A.    Securities Act Claims**

As a threshold matter, Defendants argue that Plaintiffs' Securities Act claims are subject to the heightened pleading standard of Rule 9(b), rather than the more liberal requirements of Rule 8(a), because they "sound in fraud."  (Dkt. No. 41 at 9.)  However, the Court need not decide which standard applies, as Plaintiffs' claims satisfy the heightened requirements of Rule 9(b).

      **1.    Section 11 and Section 12(a)(2)**

Sections 11 and 12(a)(2) create "three potential bases for liability based on registration statements and prospectuses filed with the SEC: (1) a misrepresentation; (2) an omission in contravention of an affirmative legal disclosure obligation; and (3) an omission of information that is necessary to prevent existing disclosures from being misleading."  *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 360 (2d Cir. 2010) (citing 15 U.S.C. §§ 77k (a), 77l(a)(2)).

Plaintiffs allege that at the time of the IPO, IDS "knew that it was about to miss its initial target date for the game's launch" (Compl. ¶ 5), and failed to disclose that it "would not be able to launch Cookie Run . . . consistent with its forecast" and that its "financial performance would be adversely affected" as a result (*id.* ¶ 46).  Plaintiffs also allege that the Registration Statement "omitted the existence of, and risks related to, ongoing billing code issues with third party

---

   ³ The arguments of IDS and the Underwriter Defendants are considered together where they address common claims.  The Court granted Plaintiffs leave to file a single memorandum of law in opposition to both motions to dismiss, to which IDS and the Underwriter Defendants responded with a single, consolidated reply memorandum of law.  (*See* Dkt. No. 86.)

telecom carriers." (*Id.* ¶ 49.)  Defendants argue that any alleged omissions were in fact disclosed and that the issues were not material to IDS's performance by the date of the IPO.[4]

First, the disclosures identified by Defendants were insufficient to adequately communicate the known risks regarding the delayed launch of Cookie Run and the billing code issues.  "[W]hen an offering participant makes a disclosure about a particular topic, whether voluntary or required, the representation must be 'complete and accurate.'"  *Morgan Stanley*, 592 F.3d at 366 (quoting *Glazer v. Formica Corp.*, 964 F.2d 149, 157 (2d Cir. 1992)).

Defendants here provided only generalized disclosures that described the risk of delayed launch, the importance of maintaining relationships with game developers, and the significance of third-party billing platforms.  (Dkt. No. 43, Ex. B at 18-21.)  For example, the Registration Statement disclosed that if IDS "fail[ed] to effectively schedule the initial launches of [its] games, [its] results of operation may be materially and adversely affected." (*Id.* at 18.)  It further stated that "[a]ny loss or deterioration of our relationship with our game developer partners may result in the loss of user base and revenues." (*Id.* at 20.)  IDS nowhere disclosed any specific information about the delayed launch of Cookie Run, or about the existence of third-party billing issues, which Plaintiffs allege, with particularity, were known to IDS at the time of the IPO. (Compl. ¶¶ 32-34, 47-49.)

IDS's generalized disclosures of potential risks are thus insufficient to shield Defendants from their obligation to disclose known risks that had already materialized by the time of the IPO.  *See In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, 986 F. Supp. 2d 487, 516 (S.D.N.Y. 2013) ("Courts in this Circuit have held that a company's purported risk disclosures are

---

[4] Defendants also argue that Plaintiffs fail to identify any affirmative misstatements.  Plaintiffs do not appear to dispute Defendants' argument as to misstatements; rather, they focus their argument on Defendants' alleged omissions. (Dkt. No. 88 at 10-19.)

misleading where the company warns only that a risk may impact its business when that risk has already materialized."); *Edison Fund v. Cogent Inv. Strategies Fund, Ltd.*, 551 F. Supp. 2d 210, 226 (S.D.N.Y. 2008) ("If a party is aware of an actual danger or cause for concern, the party may not rely on a generic disclaimer in order to avoid liability.").

Second, Plaintiffs have adequately alleged that the undisclosed issues were material to IDS's performance by the date of the IPO. "Materiality is an 'inherently fact-specific finding,' *Basic Inc. v. Levinson*, 485 U.S. 224, 236 (1988), which defies 'formulaic' assessment, *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 162 (2d Cir. 2000)." *In re Ply Gem Holdings, Inc. Sec. Litig.*, 135 F. Supp. 3d 145, 150 (S.D.N.Y. 2015). "At this stage, a 'complaint may not properly be dismissed . . . on the ground that the alleged misstatements or omissions are not material unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance.'" *Id.* (quoting *Ganino*, 228 F.3d at 162).

Plaintiffs allege that releasing Cookie Run in China represented a significant opportunity for IDS and that Defendant Zou had stated in an article that Cookie Run would be launched in 2014. (Compl. ¶ 38.) Plaintiffs allege that a "rift" between IDS and the game developer delayed IDS's receipt of the Cookie Run source code. (*Id.* ¶ 33.) Moreover, Plaintiffs allege that there were frequent technical issues in IDS's billing platform, leading to the loss of customers. (*Id.* ¶ 42.) Given the significance of these two issues to IDS's business prospects at the time of the IPO, Plaintiffs have adequately alleged that the omissions are not so obviously unimportant as to justify deeming them immaterial at this stage. *See Ply Gem*, 135 F. Supp. 3d at 150.

As a final matter, the Underwriter Defendants argue that they do not qualify as "statutory sellers" for the purpose of Plaintiffs' Section 12(a)(2) claim. "An individual is a 'statutory seller'—and therefore a potential section 12(a)(2) defendant—if he: (1) 'passed title, or other

interest in the security, to the buyer for value,' or (2) 'successfully solicit[ed] the purchase [of a security], motivated at least in part by a desire to serve his own financial interests or those of the securities['] owner.'" *Morgan Stanley*, 592 F.3d at 359 (alterations in original) (quoting *Pinter v. Dahl*, 486 U.S. 622, 647 (1988)).

Plaintiffs here allege that "the Underwriter Defendants offered ADSs of the Company to the Class" and solicited the purchase of the ADSs through "preparation and/or dissemination of the Registration Statement and/or Prospectus and/or the solicitation of the class." (Compl. ¶ 88.) They further allege that the Underwriter Defendants profited from the transaction, confirming that they were motivated by their desire to serve their own financial interests. (*Id.* ¶ 36; *see also* Dkt. No. 43, Ex. C at 200-01 (describing the underwriting fees).) This is sufficient to justify standing under section 12(a)(2) and to give the underwriters "fair notice of the basis for the claims against them." *In re Worldcom, Inc. Sec. Litig.*, 294 F. Supp. 2d 392, 423 (S.D.N.Y. 2003). Plaintiffs are not required to identify the specific defendant from whom they purchased the ADSs, *see id.*; it is sufficient to allege that they purchased them in connection with the IPO (*see* Compl. ¶¶ 17-21).

### 2. Section 12(a)(1)

Section 12(a)(1) imposes liability on sellers of *unregistered* securities. 15 U.S.C. § 77l(a)(1); *see Pinter*, 486 U.S. at 641-42. Here, Plaintiffs seek to bring a class action on behalf of individuals who acquired IDS ADSs "pursuant and/or traceable to the Company's Registration Statement and/or Prospectus." (Compl. ¶ 1.) The Complaint makes clear that the securities were sold under an effective Registration Statement and nowhere suggests that the registration was defective or that any securities were unregistered. Because Plaintiffs have not alleged that unregistered securities were sold, their claims under Section 12(a)(1) must be dismissed. *See,*

*e.g.*, *DeMaria v. Andersen*, 153 F. Supp. 2d 300, 308 (S.D.N.Y. 2001), *aff'd*, 318 F.3d 170 (2d Cir. 2003).

**B.     Exchange Act Claims**

Plaintiffs also bring claims under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder against IDS and the Officer Defendants.[5]

To state a claim under Section 10(b) and Rule 10b-5, a plaintiff must show "that the defendant (1) made misstatements or omissions of material fact, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) upon which the plaintiff relied, and (5) that the plaintiff's reliance was the proximate cause of its injury." *In re Agnico-Eagle Mines Ltd. Sec. Litig.*, No. 11 Civ. 7968, 2013 WL 144041, at *11 (S.D.N.Y. Jan. 14, 2013) (quoting *ATSI*, 493 F.3d at 105), *aff'd sub nom. Forsta AP-Fonden v. Agnico-Eagle Mines Ltd.*, 533 F. App'x 38 (2d Cir. 2013).

IDS argues that Plaintiffs fail to plead any actionable misstatements or omissions and that Plaintiffs fail to plead scienter.

**1.     Misstatements and Omissions**

Plaintiffs alleging securities fraud must satisfy Rule 9(b)'s heightened pleading requirement, which demands that "the circumstances constituting fraud . . . shall be stated with particularity." *Novak*, 216 F.3d at 306 (alteration in original).

Plaintiffs identify multiple alleged misstatements and omissions.  In addition to the allegations discussed above in connection with the Registration Statement and Prospectus,

---

[5] Plaintiffs also bring claims under Section 20(a) against the Officer Defendants. Section 20(a) creates joint and several liability for any individual who "controls any person liable under any provision of this chapter or any rule or regulation thereunder . . . unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action." 15 U.S.C. § 78t(a).

9

Plaintiffs also rely on statements made in news articles in August 2014 by IDS's CFO, Zou, describing Cookie Run as having a 2014 launch date, and a November 25, 2014, press release, in which IDS included its revenue projections for 2014 (incorporating 2014 revenue from Cookie Run). (Compl. ¶¶ 38-39, 50, 52.) Plaintiffs identify each statement with particularity, describing the circumstances under which it was made and by whom. *See Novak*, 216 F.3d at 306.

As discussed above, the disclosures of generalized risk in the Registration Statement and Prospectus are insufficient to excuse Defendants from having to disclose the specific Cookie Run delays and third-party billing issues. Moreover, the claims made in the press release and news articles similarly communicate the belief that Cookie Run was to be launched by the end of 2014, despite Plaintiffs' well-pleaded allegations of Defendants' knowledge of the delays that would postpone the launch into the following year.

Defendants argue that the statements in the news articles and press releases are not actionable because they are merely optimistic statements of opinion. (Dkt. No. 41 at 19.) However, "opinions, though sincerely held and otherwise true as a matter of fact, may nonetheless be actionable if the speaker omits information whose omission makes the statement misleading to a reasonable investor." *Tongue v. Sanofi*, 816 F.3d 199, 210 (2d Cir. 2016) (citing *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 135 S. Ct. 1318, 1332, (2015)). The failure to acknowledge the then-known delays in the launch of Cookie Run and to update the 2014 revenue projections accordingly is precisely the type of omission that, even if included in the context of an opinion, would be misleading to a reasonable investor.

Finally, these forward-looking predictions are not shielded under the "safe harbor" provision of the Private Securities Litigation Reform Act ("PSLRA"). The PSLRA provides that "a statement of the plans and objectives of management for future operations, including plans or

objectives relating to the products or services of the issuer" or "a statement of future economic performance," 15 U.S.C. § 78u-5(i)(1), will not give rise to liability if it was made without "*actual knowledge* . . . that the statement was false or misleading," *id.* § 78u-5(c)(1)(B) (emphasis added).  *See Slayton v. Am. Express Co.*, 604 F.3d 758, 765–66 (2d Cir. 2010).  However, for the reasons discussed above, Plaintiffs have adequately alleged that at the time the relevant statements were made, Defendants were fully aware of the delays affecting the launch date of Cookie Run.  Plaintiffs have pleaded enough to suggest that Defendants had actual knowledge that their statements predicting a 2014 launch date were false and misleading, thus precluding application of the PSLRA safe harbor.

    **2.**  **Scienter**

    To plead a "strong inference" of scienter as required for claims under the Exchange Act, a plaintiff must allege "facts (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness."  *ATSI*, 493 F.3d at 99; *see also* 15 U.S.C. § 78u-4(b)(2).  Recklessness may be shown by allegations that defendants "knew facts or had access to information suggesting that their public statements were not accurate or failed to check information they had a duty to monitor."  *Novak*, 216 F.3d at 311 (citation omitted).  "A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).

    Here, Defendants' failure to disclose the delays in the Cookie Run launch and the issues relating to third-party billing are sufficient to support a strong inference of scienter.  Plaintiffs allege that in March of 2014, an IDS press release described plans to release Cookie Run in the

second or third quarter of that year. (Compl. ¶ 31.) This timeline was confirmed in an interview with Zou, Chief Financial Officer of IDS, on August 7, 2014, the date of the filing of the Registration Statement and Prospectus. (*Id.* ¶¶ 38-39.) And a press release dated November 25, 2014, included revenue projections incorporating revenue from Cookie Run in the fourth quarter of 2014. (*Id.* ¶¶ 50, 52.) In none of these statements—including the November 25 press release, issued with just over a month remaining in the year[6]—did Defendants acknowledge that the release of Cookie Run would be delayed or that the third-party billing issues were having an adverse impact on company performance. It was not until March 13, 2015, that IDS acknowledged that its 2014 revenue was short of previous expectations because "the launch of a popular casual game was delayed." (*Id.* ¶ 54.)

Plaintiffs marshal the statements of several employees of IDS to allege that Defendants were aware of the delay and the billing issues, as well as their adverse impact on company performance, in advance of these statements. (*Id.* ¶¶ 32-34, 54, 58.) Each of these confidential witnesses was an employee of IDS during the relevant time period, and the descriptions provided of their roles and employment histories show that they are likely to possess the relevant information: Employee "FE1" was a game planner for IDS from April 2014 to December 2015, who was responsible for planning the development of Cookie Run, and who confirmed the troubled and prolonged negotiations between IDS and the game developer; "FE2" was a senior

---

[6] The timing of the press release is not alone sufficient to support an inference of scienter. *See, e.g.*, *Elliott Assocs., L.P. v. Covance, Inc.*, No. 00 Civ. 4115, 2000 WL 1752848, at *7 (S.D.N.Y. Nov. 28, 2000) ("The mere disclosure of adverse information shortly after a positive statement does not support a finding that the prior statement was false at the time it was made."). However, considered alongside the allegations from former IDS employees and the earlier statements made by the company and Defendant Zou, the proximity between the date of the press release at the end of 2014 supports the inference that Defendants would likely have knowledge that the launch of Cookie Run would be delayed into the following year and that the third-party billing issues would not be resolved by the end of the year (just one month later).

operations manager for IDS, reported to IDS vice president Wang Bo, and was aware of delays in the receipt of the Cookie Run source code, claiming that the delay may have resulted in losses of $4 to 5 million; and "FE3" was a mobile game testing engineer from January 2014 to January 2015, who provided context about the game development process and IDS's lack of an adequate billing platform through the end of 2014.  (*See id.*)

These allegations are sufficient to support Plaintiffs' claim that Defendants had access to information, or otherwise failed to check information, that would have indicated that their public statements were not accurate.  *See In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 495 (S.D.N.Y. 2004) ("[A] plaintiff is not required to plead internal reports to demonstrate that contradictory facts were available to the defendants when they made certain statements in all cases where it is alleged the defendants were reckless; it is sufficient to plead statements obtained from confidential sources with pertinent knowledge so long as those sources are described adequately.").  This, in turn, supports an inference of recklessness, and thus scienter, that is at least as plausible as any opposing inference one could draw from the facts. *See Tellabs*, 551 U.S. at 324.  While further discovery may reveal that Defendants were in fact unaware of the delays in the launch of Cookie Run and its likely adverse impact on IDS's performance, at this stage Plaintiffs have carried their burden.

As a final matter, contrary to Defendants' argument, Plaintiffs are not required to allege scienter with regard to each Individual Defendant.  (Dkt. No. 41 at 23.)  It is sufficient to do so with regard to the "corporate entity."  *See Teamsters Local 445 Freight Division Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 195 (2d Cir. 2008).  In any event, the Individual Defendants have not moved to dismiss—before the Court are motions to dismiss only from IDS and the Underwriter Defendants.

Plaintiffs' claims under the Exchange Act thus survive Defendants' motion to dismiss.

## IV. Conclusion

For the foregoing reasons, Defendants' motions to dismiss are GRANTED IN PART and DENIED IN PART. Defendants are directed to answer Plaintiffs' remaining claims within twenty-one days of the date of this order.

The Clerk of Court is directed to close the motions at Docket Number 40 and Docket Number 42.

SO ORDERED.

Dated: February 22, 2017
　　　　New York, New York

_____
J. PAUL OETKEN
United States District Judge