UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| IN RE IDREAMSKY TECHNOLOGY LIMITED SECURITIES LITIGATION | No. 15-cv-2514 (JPO)<br><br>**CLASS ACTION** |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

Jacob A. Goldberg
Keith R. Lorenze
The Rosen Law Firm, P.A.
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
T: (205) 600-2817
F: (212) 202-3827
jgoldberg@rosenlegal.com
klorenze@rosenlegal.com

Joshua L. Crowell
Joseph Cohen
Glancy Prongay & Murray LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
T: (310) 201-9150
F: (310) 432-1495
jcrowell@glancylaw.com
jcohen@glancylaw.com

*Co-Lead Counsel for Plaintiffs*

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................. 1

II.     SUMMARY OF THE LITIGATION AND SETTLEMENT ............................... 3

        A.      Procedural History of the Litigation ................................................. 3

        B.      The Settlement ................................................................................. 4

        C.      Summary of Key Terms of the Proposed Settlement ........................ 5

                1.      Relief to Settlement Class Members ..................................... 5

                2.      Class Notice and Settlement Administration ......................... 5

                        a)      Notice ........................................................................ 5

                        b)      Administration .......................................................... 6

                        c)      Costs of Notice and Administration ........................... 6

                3.      Opt-Out and Objection Provisions ........................................ 6

                4.      Release Provisions ................................................................ 7

                5.      Attorneys' Fees and Expenses .............................................. 7

                6.      No Admission of Liability ..................................................... 7

III.    PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS
        APPROPRIATE ................................................................................................. 8

        A.      The Settlement Should Be Preliminarily Approved Because It Falls Within the
                Range of Reasonableness ................................................................. 8

        B.      The Settlement Negotiated By the Parties Enjoys a Presumption of Fairness ..... 10

        C.      The Settlement Benefit Falls Within the Range of Possible Approval ................ 12

                1.      The Complexity, Expense, and Likely Duration of the Litigation .......... 13

                2.      Stage of Proceedings .......................................................... 14

                3.      The Risks of Establishing Liability and Damages ................... 15

                4.      The Risks of Maintaining the Class Action Through Trial ...... 16

                5.      Reasonableness of the Settlement Fund ............................... 16

IV.   THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR
      SETTLEMENT PURPOSES ............................................................................ 17

      A.    The Proposed Settlement Class Meets the Requirements of Rules 23(a) and
            23(b)(3) ........................................................................................................ 17

            1.    The Settlement Class Satisfied the Requirement of Fed. R. Civ. P. 23(a) 18

            2.    The Settlement Class Satisfied the Requirements of Fed. R. Civ. P.
                  23(b)(3) ............................................................................................. 21

      B.    The Court Should Appoint Lead Counsel as Counsel for the Settlement Class ... 22

V.    THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF
      CLASS NOTICE ............................................................................................. 23

      A.    Notice By Direct Mail and Publication Is Appropriate ........................................ 23

      B.    The Proposed Form of Notice Adequately Informs Settlement Class Members of
            Their Rights in This Litigation ............................................................................ 25

VI.   PROPOSED SCHEDULE OF EVENTS ......................................................... 26

VII.  CONCLUSION ................................................................................................ 27

## TABLE OF AUTHORITIES

**Cases**

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591 (1997) .................................................................................................. 18, 20

*Bourlas v. Davis Law Assocs.*,
  237 F.R.D. 345 (E.D.N.Y. 2006) ...................................................................................... 18

*Carson v. Am. Brands, Inc.*,
  450 U.S. 79 (1981) ............................................................................................................ 9

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
  504 F.3d 229 (2d Cir. 2007) ........................................................................................ 18, 19

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ..................................................................................... 9, 12, 16

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
  502 F.3d 91 (2d Cir. 2007) .............................................................................................. 21

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001) .............................................................................................. 10

*Diaz v. E. Locating Serv. Inc.*,
  No. 10 Civ. 4082, 2010 U.S. Dist. LEXIS 139136 (S.D.N.Y. Nov. 29, 2010) ....................... 10

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005) ...................................................................................... 16

*Haddock v. Nationwide Fin. Servs., Inc.*,
  262 F.R.D. 97 (D. Conn. 2009) ........................................................................................ 19

*Hicks v. Stanley*,
  No. 01 CIV. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) .............................. 14

*In re Am. Bank Note Holographics, Inc.*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001) ............................................................................... 15

*In re China Sunergy Sec. Litig.*,
  No. 07 Civ. 78595 (DAN) 2011 U.S. Dist. LEXIS 53007 (S.D.N.Y. May 13, 2011) ................ 2

*In re Citigroup Inc. Bond Litig.*,
  296 F.R.D. 147 (S.D.N.Y. 2013) ...................................................................................... 13

*In re Citigroup Inc. Sec. Litig.*,
   965 F. Supp. 2d 369 (S.D.N.Y. 2013) ................................................................ 12

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
   No 05 Civ. 10240 (CM), 2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007) ................. 9

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   574 F.3d 29 (2d Cir. 2009)............................................................................. 20

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   No. 02-CV-3400 CM PED, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) .......................... 13

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) ..................................................................... 10

*In re Gilat Satellite Networks, Ltd.*,
   No. CV-02-1510 CPS, 2007 WL 1191048 (E.D.N.Y. Apr. 19, 2007) .............................. 13

*In re Initial Pub. Offering Sec. Litig.*,
   260 F.R.D. 81 (S.D.N.Y. 2009)........................................................................ 19

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) ................................................................ 12, 23

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000)........................................................................... 16

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
   No. 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 9450, (S.D.N.Y. Feb. 1, 2007).................. 2

*In re Oxford Health Plans, Inc.*,
   191 F.R.D. 369 (S.D.N.Y. 2000) ..................................................................... 19

*In re Prudential Sec. Inc. Ltd. P'ship Litig.*,
   107 F.3d 3 (2d Cir. 1996)............................................................................... 25

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.*,
   164 F.R.D. 362 (S.D.N.Y. 1996) ..................................................................... 24

*In re Rite Aid Corp. Sec. Litig.*,
   146 F. Supp. 2d 706 (E.D. Pa. 2001) ................................................................ 16

*In re Sadia, S.A. Sec. Litig.*,
   269 F.R.D. 298 (S.D.N.Y. 2010) ..................................................................... 19

*In re Salomon Analyst Metromedia Litig.*,
    544 F.3d 474 (2d Cir. 2008) ........................................................................... 21

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
    No. 06 CIV. 5173 (RPP), 2008 WL 1956267 (S.D.N.Y. May 1, 2008) .................................. 14

*In re Twinlab Corp. Sec. Litig.*,
    187 F. Supp. 2d 80 (E.D.N.Y. 2002) ................................................................... 20

*Marisol A. v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997) ........................................................................... 18

*Menkes v. Stolt-Nielsen S.A.*,
    270 F.R.D. 80 (D. Conn. 2010) .................................................................... 18, 21

*Milstein v. Huck*,
    600 F. Supp. 254 (E.D.N.Y. 1984) ..................................................................... 13

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950) .................................................................................... 23

*Palacio v. E*TRADE Fin. Corp.*,
    10 Civ. 4030 (LAP) (DCF), 2012 U.S. Dist. LEXIS 88019 (S.D.N.Y. June 22, 2012) .......... 8, 10

*Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*,
    645 F. Supp. 2d 210 (S.D.N.Y. 2009) ................................................................. 15

*Soberal-Perez v. Heckler*,
    717 F.2d 36 (2d Cir. 1983) ........................................................................... 23

*Spann v. AOL Time Warner, Inc.*,
    No. 02 Civ. 8238 (DLC), 2005 U.S. Dist. LEXIS 10848 (S.D.N.Y. June 7, 2005) .................. 8

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003) ................................................................. 14

*Thompson v. Metro. Life Ins. Co.*,
    216 F.R.D. 55 (S.D.N.Y. 2003) ....................................................................... 12

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ............................................................................. 9

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982) ........................................................................... 17

*Wright v. Stern*,
   553 F. Supp. 2d 337 (S.D.N.Y. 2008) ................................................................ 9

**Statutes**

15 U.S.C. § 78u-4(a)(7) ................................................................................................ 25

**Rules**

Fed. R. Civ. P. 23 ........................................................................................................ 2

Fed. R. Civ. P. 23(a) ...................................................................................... 18, 19, 20

Fed. R. Civ. P. 23(a)(1) ............................................................................................. 18

Fed. R. Civ. P. 23(a)(2) ............................................................................................. 19

Fed. R. Civ. P. 23(a)(4) ............................................................................................. 20

Fed. R. Civ. P. 23(b)(1) ............................................................................................. 18

Fed. R. Civ. P. 23(b)(3) ................................................................................. 18, 21, 25

Fed. R. Civ. P. 23(b)(3)(D) ....................................................................................... 18

Fed. R. Civ. P. 23(c)(2) ............................................................................................. 25

Fed. R. Civ. P. 23(e) .................................................................................................... 9

Fed. R. Civ. P. 23(g) ................................................................................................. 22

Fed. R. Civ. P. 23(g)(1)(A) ....................................................................................... 22

**Regulations**

17 C.F.R. § 240.10b-5 .................................................................................................. 4

Lead plaintiff Melvyn Boey Kum Hoong ("Lead Plaintiff"), individually and on behalf of the proposed Settlement Class, and additional plaintiffs Jets Holdings, LLC, Masoud Shemirani, Michael Rubin, and Roger Mariani (collectively with Lead Plaintiff, "Plaintiffs"), respectfully submit this memorandum in support of their unopposed motion seeking preliminary approval of the proposed Settlement they have reached with defendants IDreamSky Technology Limited ("IDS" or the "Company"), Credit Suisse Securities (USA) LLC ("Credit Suisse"), J.P. Morgan Securities LLC ("J.P.Morgan"), Stifel, Nicolaus & Co., Inc. ("Stifel Nicolaus"), and Piper Jaffray & Co. ("Piper Jaffray") (collectively, "Defendants").[1]  This memorandum outlines the parameters of the Settlement, demonstrates why preliminary approval should be granted, and proposes a schedule for final approval of the Settlement.  It also demonstrates why the Court should: (i) certify the proposed Settlement Class; and (ii) approve the form and manner of providing notice of the Settlement to Settlement Class Members.

## I.   INTRODUCTION

Plaintiffs and Defendants have agreed to settle this case for $4.15 million ($4,150,000.00). By this motion, Plaintiffs seek to begin the settlement approval process, through an order:

- Granting preliminary approval of the Settlement, the terms of which are set forth in the Stipulation, which the Court should order because the Settlement Amount of $4.15 million "falls within the range of possible approval";

- Certifying a class for settlement purposes only, appointing Lead Plaintiff as the Class Representative, and appointing The Rosen Law Firm, P.A. ("Rosen") and

---

[1] All capitalized terms used herein have the meanings set forth and defined in the Stipulation and Agreement of Settlement (the "Stipulation").  A true and correct copy of the Stipulation and its exhibits (Exhibits A-E) are altogether attached as Exhibit 1 to the accompanying Declaration of Jacob A. Goldberg in Support of Preliminary Approval of Class Action Settlement ("Goldberg Decl.").

Glancy Prongay & Murray LLP ("Glancy") as Co-Class Counsel, which the Court should order because the prerequisites of Fed. R. Civ. P. 23 are met;

● Approving the parties' proposed form and method of giving Settlement Class Members notice of the action and proposed Settlement, which the Court should order because the Notice and the plan to provide notice meet all applicable requirements;

● Setting a hearing on whether the Court should grant final approval of the Settlement, dismiss claims against the Defendants, approve the release of claims against all Released Parties, enter judgment, and award attorneys' fees and expenses to Co-Lead Counsel.

*See* Stipulation, Exhibit A (Proposed Preliminary Approval Order).

The Settlement is a fair and reasonable result for Settlement Class Members.  Plaintiffs estimate that the Settlement returns almost 13% of estimated damages, before attorneys' fees and out-of-pocket costs – well above the median settlement for similar securities class actions.  *See* Cornerstone Research, "Securities Class Action Settlement – 2016 Review and Analysis," at 7-8 (median recovery in all securities class actions from 2007 to 2016 was approximately 1.8% – 2.9% of estimated damages, and the median recovery in securities class actions with estimated damages of less than $50 million was 10.8% of estimated damages between 2006 and 2015 and 7.3% in 2015); *see also In re China Sunergy Sec. Litig.*, No. 07 Civ. 78595 (DAN) 2011 U.S. Dist. LEXIS 53007, at *15 (S.D.N.Y. May 13, 2011) ("the average settlement amounts in securities fraud class actions where investors sustained losses over the past decade . . . have ranged from 3% to 7% of the class members' estimated losses") (internal quotation marks omitted); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 9450,

at*33 (S.D.N.Y. Feb. 1, 2007) (a recovery of approximately 6.25% was "at the higher end of the range of reasonableness of recovery in class action[] securities litigations.").

## II.    SUMMARY OF THE LITIGATION AND SETTLEMENT

### A.  Procedural History of the Litigation

Beginning on April 2, 2015, four putative class actions were filed on behalf of investors in the United States District Court for the Southern District of New York and New York Supreme Court, alleging violations of the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act") against: (a) IDS; (b) certain officers of and directors of IDS, Micahel Ziangyu Chen ("Chen"), Jun Zou ("Zou"), Anfernee Song Guan ("Guan"), Jeffrey Lyndon Ko ("Ko"), Erhai Liu ("Lis"), Steven Xiaoyi ("Ma"), Mingyao Wang ("Wang") and David Yuan ("Yuan") (collectively, "Individual Defendants"); and (c) the underwriters of IDS's initial public offering, Credit Suisse, J.P. Morgan, Stifel Nicolaus, and Piper Jaffray (collectively, the "Underwriter Defendants").[2]

On January 25, 2016, the Court consolidated the four actions and appointed Hoong as Lead Plaintiff and Rosen and Glancy as Co-Lead Counsel, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), as amended.  (ECF No. 35.)

On March 25, 2016, Plaintiffs filed their Consolidated Amended Class Action Complaint (the "Amended Complaint").  (ECF No. 38.)  The Amended Complaint asserted claims pursuant to §§ 11, 12 and 15 of the Securities Act and §§ 10(b) and 20(a) of the Exchange Act, and Rule

---

[2] Against IDS, Plaintiffs alleged violation of §§ 11 and 12(a)(1) of the Securities Act and § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.  Against the Underwriter Defendants, Plaintiffs alleged violations of §§ 12(a)(1) and 12(a)(2) of the Securities Act. Plaintiffs also alleged that the Individual Defendants violated §§ 11 and 15 of the Securities Act and § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.  Against Chen and Zou only, Plaintiffs alleged violations of § 20(a) of the Exchange Act.

10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5), on behalf of a class of all persons or entities who purchased or otherwise acquired IDS American Depository Shares ("ADSs") pursuant and/or traceable to the Company's Registration Statement and/or Prospectus issued in connection with IDS' initial public offering on or about August 7, 2014 and/or in the open market between August 7, 2014 and March 13, 2015, inclusive (the "Settlement Class Period").  Plaintiffs alleged, *inter alia*, that Defendants made false and misleading statements and failed to disclose material adverse facts about the Company's business, operations and prospects during the Class Period.

On May 9, 2016, IDS and the Underwriter Defendants separately moved to dismiss[3] the claims against them.  (ECF Nos. 40, 42).[4]  On February 22, 2017, the Court issued an Opinion and Order denying, in substantial part, Defendants' motions to dismiss (ECF No. 93).  Shortly thereafter, the parties agreed to engage in a mediation of Plaintiffs' claims before Robert Meyer, Esq., of JAMS ("Meyer" or the "Mediator").  Plaintiffs conditioned their participation in the mediation on IDS producing documents in response to tailored document requests.  After negotiation on the scope of production, in August, 2017, IDS produced 64,972 pages of responsive documents. Plaintiffs reviewed those documents, translating some from Chinese.  Plaintiffs were able to incorporate information they discovered into their mediation statement.

### B.  The Settlement

On September 12, 2017, a mediation was held with Meyer.  After a full day's mediation, Meyer made a mediator's proposal to settle the Action for $4.15 million.  On September 14, 2017, Mr. Meyer informed the parties that all had accepted his proposal.

---

[3] Although IDS and the Underwriter Defendants filed separate motions to dismiss, on July 25, 2016, they filed a Joint Reply Memorandum of Law in Further Support of Their Motions to Dismiss the Complaint.  (ECF No. 91.)

[4] The Individual Defendants are PRC residents and Plaintiffs did not accomplish service by the Hague Convention.

### C.  Summary of Key Terms of the Proposed Settlement

#### 1.  Relief to Settlement Class Members

In full and final settlement of all claims asserted in this Action, and all Released Claims that have been or could have been asserted by Settlement Class Members or Plaintiffs against Defendants and the Released Parties in the Action, IDS shall pay or cause the Company's insurers to pay four million, one hundred fifty thousand U.S. dollars ($4,150,000) in cash.

#### 2.  Class Notice and Settlement Administration

##### a)  Notice

Within twenty-one (21) days of entry of the Preliminary Approval Order, Co-Lead Counsel, through the Claims Administrator shall provide individual notice via first class mail, postage prepaid, substantially in the form attached to the Stipulation as Exhibit B, to all Settlement Class Members who can be identified by reasonable efforts by the Claims Administrator.  No later than seven (7) days after receiving from the Company or its transfer agent the list of record owners of ADSs during the Settlement Class Period, the Claims Administrator will similarly provide individual notice via mail to each Settlement Class Member.  As soon as practical after receiving lists of beneficial owners from nominees and custodians, the Claims Administrator shall mail the Notice to all Settlement Class Members whom the Claims Administrator identifies by reasonable efforts.  No later than fourteen (14) days after entry of the Preliminary Approval Order, the Claims Administrator shall publish the Summary Notice, substantially in the form attached to the Stipulation as Exhibit C, on *GlobalNewswire*.

The Notice describes in plain English the terms of the Settlement, the considerations that led Co-Lead Counsel and Lead Plaintiff to conclude that the Settlement is fair, reasonable and adequate, the maximum attorneys' fees award and expense reimbursement that may be sought, the procedure for objecting to and Opting Out of the Settlement, the proposed Plan of Allocation and

the date and place of the Settlement Hearing.  This notice program will fairly apprise Settlement Class Members of the Settlement and their options with respect thereto.  It also fully satisfies all due process requirements.

### b)  Administration

The Claims Administrator will administer distribution of the Net Settlement Fund pursuant to the Stipulation.  In accordance with the Stipulation, IDS shall pay or cause to be paid the Settlement Amount to an interest-bearing escrow account in a federally-chartered bank designated by Co-Lead Counsel to be controlled by said bank as the Escrow Agent for the benefit of the Settlement Class, with all interest to accrue for the benefit of the Settlement Class.  Once the Settlement becomes final following entry of the final judgment substantially in the form attached to the Stipulation as Exhibit E, no monies shall revert to Defendants.

### c)  Costs of Notice and Administration

Upon deposit in the Escrow Account of the Settlement Amount, the Escrow Agent may transfer one hundred fifty thousand U.S. dollars ($150,000) from the Escrow Account to an interest-bearing account the Settlement Administrator shall maintain to pay reasonable and necessary Administrative Costs.

### 3.  Opt-Out and Objection Provisions

Any Settlement Class Member who wishes to object to the fairness of the Stipulation, must, by the objection deadline set forth in the Notice (*see* Exhibit B of the Stipulation), file an objection with the Court, and provide copies of the objection to Co-Lead Counsel, Defendants' counsel, and the Court.  Any Settlement Class Member who does not file a timely objection to the Stipulation shall be foreclosed from seeking any adjudication or review of the Stipulation by appeal or otherwise.

Any Settlement Class Member who wishes to Opt Out and be excluded as a Settlement Class Member may submit a written exclusion request, postmarked no later than the exclusion deadline set forth in the Notice, to the Claims Administrator in addition to Co-Lead Counsel and Defendants' counsel.

### 4.  Release Provisions

Upon the Effective Date defined in the Stipulation, Plaintiffs and each Settlement Class Member who does not timely exclude himself/herself/itself from the Settlement Class, including any other person acting on his/her/its behalf or for his/her/its benefit, shall be deemed to have, and by operation of law and of the judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Claim (including any Unknown Claims) against the Defendants and the Released Parties, shall be permanently and forever enjoined from instituting, commencing or prosecuting, in any capacity, any and all of the Released Claims against any of the Released Parties, and shall be deemed to permanently covenant to refrain from instituting, commencing or prosecuting, in any capacity, any and all of the Released Claims against any of the Released Parties.

### 5.  Attorneys' Fees and Expenses

For their services rendered on behalf of the Settlement Class, Co-Lead Counsel intend to seek an attorneys' fee award not to exceed 33 1/3% of the Settlement Amount, as well as the reimbursement of the reasonable costs and expenses incurred, including lost wages by Plaintiffs directly related to their representation of the Settlement Class.  The Defendants take no position with respect to Co-Lead Counsel's request for attorneys' fees and expenses.

### 6.  No Admission of Liability

Each of the Defendants denies each and every claim alleged by Plaintiffs and the Settlement Class in the Action, and this Settlement shall in no event be construed or deemed to be evidence

of or an admission or concession on the part of any of the Defendants or Released Parties with respect to any claim or allegation of any fault or liability or wrongdoing or damage whatsoever, or any infirmity in the defenses that the Defendants have, or could have, asserted.  Defendants expressly deny that Plaintiffs have asserted any valid claims as to any of them, and expressly deny any and all allegations of fault, liability, wrongdoing, violation of the law or damages whatsoever. Similarly, the Stipulation shall in no event be construed or deemed to be evidence of an admission or concession on the part of any Plaintiff of any infirmity in any of the claims asserted in the Action, or an admission or concession that any of the Defendants' defenses to liability had any merit.  Each of the parties recognizes and acknowledges, however that the Action has been initiated, filed and prosecuted by Plaintiffs in good faith and defended by Defendants in good faith, that the Action is being voluntarily settled with the advice of counsel, and that the terms of the Settlement are fair, adequate and reasonable.

## III.   PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS APPROPRIATE

### A.  The Settlement Should Be Preliminarily Approved Because It Falls Within the Range of Reasonableness

The law favors settlement of class actions and other complex cases both because they consume substantial judicial resources and the parties' time and money and resolution is usually significantly delayed.  *Palacio v. E\*TRADE Fin. Corp.*, 10 Civ. 4030 (LAP) (DCF), 2012 U.S. Dist. LEXIS 88019, at \*7 (S.D.N.Y. June 22, 2012) (citation omitted); *see also Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238 (DLC), 2005 U.S. Dist. LEXIS 10848, at\*18 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions"); *Newberg on Class Actions* (Fourth) (2002) § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").  Due to the presumption in favor of settlement, and

"[a]bsent fraud or collusion," courts "should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No 05 Civ. 10240 (CM), 2007 U.S. Dist. LEXIS 57918, at*12 (S.D.N.Y. July 27, 2007).  More explicitly, the Supreme Court has cautioned that in reviewing a proposed class settlement, courts should "not decide the merits of the case or resolve unsettled legal questions."  *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n. 14 (1981).

Where, as here, the parties propose to resolve class action litigation through a class-wide settlement, they must request and obtain the Court's approval.  *See* Fed. R. Civ. P. 23(e); *Wright v. Stern*, 553 F. Supp. 2d 337, 343 (S.D.N.Y. 2008).  The typical process for approval of class action settlements is described in the § 21.632 Preliminary Fairness Review, Manual for Complex Litigation (4th) § 21.632.  The steps are:

1.  Preliminary approval of the proposed settlement at an informal hearing;

2.  Dissemination of mailed and/or published notice of the settlement and fairness hearing to all affected class members; and

3.  A formal fairness, or final approval, hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is presented.

This procedure, commonly employed by federal courts, safeguards class members' procedural due process rights and enables the court to fulfill its role as the guardian of the class members' interests.  *See Newberg*, § 11.25 (quoting *Manual for Complex Litigation* (Second) (1985).  In the Second Circuit, courts will examine the negotiating process leading to the settlement.  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).  They will also determine whether the settlement's terms are fair, reasonable, and adequate, using the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

**B.  The Settlement Negotiated By the Parties Enjoys a Presumption of Fairness**

"In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery."  *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 U.S. Dist. LEXIS 47036, at *18 (S.D.N.Y. May 11, 2010) (citation omitted).  Courts also give weight to the parties' judgment that the settlement is fair and reasonable.  *See Palacio*, 2012 U.S. Dist. LEXIS 88019, at *8; *Diaz v. E. Locating Serv. Inc.*, No. 10 Civ. 4082, 2010 U.S. Dist. LEXIS 139136, at *10 (S.D.N.Y. Nov. 29, 2010); *Clark*, 2010 U.S. Dist. LEXIS 47036, at *18.

On September 12, 2017, a mediation was held with Mr. Meyer.  In advance of that session, Defendant iDreamsky produced documents responsive to Plaintiffs' focused requests. Plaintiffs reviewed these documents in anticipation of the mediation. The Plaintiffs and IDS exchanged, and provided to the Mediator, detailed mediation statements and exhibits that addressed liability and damages issues.  At the close of the mediation, Mr. Meyer made a mediator's proposal to settle the Action for the amount of $4.15 million.  On September 14, 2017, Mr. Meyer informed the parties that they had accepted his proposal.

The arm's-length nature of the settlement negotiations, and the involvement of an experienced mediator, supports the conclusion that the Settlement is fair and was achieved free of collusion.  *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure."); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 160 (S.D.N.Y. 2011) (the fact that negotiations were "facilitated by a respected mediator" supported the presumption of fairness).

In negotiating the Stipulation, Plaintiffs had the benefit of attorneys who are highly-experienced in complex litigation and familiar with the legal and factual issues of the case.  *See* Goldberg Decl., Exhs. 2, 3 (Rosen and Glancy Firm Resumes).  In Co-Lead Counsel's view, the Settlement provides substantial benefits to the Settlement Class, especially when considering the expense, risks, difficulties, delays, and uncertainties of litigation, trial, and post-trial proceedings.

In addition, the parties and their counsel were knowledgeable about the strengths and weaknesses of the case prior to reaching the agreement to settle.  Plaintiffs conducted an extensive investigation prior to filing the Amended Complaint, which included interviews with the Company's former employees and a thorough review of publicly available information; engaged their own damages expert; and had the benefit of Defendants' briefs in support of their motions to dismiss, the decision on the motion to dismiss, and mediation statements setting forth Defendants' arguments and defenses to Plaintiffs' theories of liability, damages, and loss causation.  As a result, Plaintiffs and Co-Lead Counsel had an adequate basis for assessing the strength and weaknesses of the Settlement Class's claims and Defendants' defenses when they entered into the Settlement.

Furthermore, the Settlement does not provide preferential treatment to Plaintiffs or any other Settlement Class Members.  Indeed, the proposed Plan of Allocation, which is set forth in the Notice (§§ 8(b)) and was developed by Plaintiffs' damages expert in consultation with Co-Lead Counsel, provides a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members who submit valid claim forms.  Under the Plan of Allocation, a "Recognized Loss Amount" will be calculated for each purchase of the Company's ADSs during the Settlement Class Period for which adequate documentation is provided.  The calculation of Recognized Loss Amount is explained in detail in the Notice and will be based on several factors, including when class members purchased and sold IDS' ADSs, the purchase and sale price of IDS'

ADSs at the time of purchase and sale, and the strength of the claims.  The sum of a Claimant's Recognized Loss Amount is the Claimant's "Recognized Claim."  The Net Settlement Fund will be allocated to authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims.  Similar plans have repeatedly been approved by courts in this District.  *See In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 386–87 (S.D.N.Y. 2013); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145–46 (S.D.N.Y. 2010).

For all these reasons, the Settlement was the product of a thorough, arm's length process, and as such, it enjoys a presumption of fairness.

### C.  The Settlement Benefit Falls Within the Range of Possible Approval

At the Settlement Hearing, in finally determining whether a settlement is fair, reasonable, and adequate, the Court will have to decide whether to approve the settlement under the factors articulated in *Grinnell*:  (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  495 F.2d at 463.  All nine factors need not be satisfied; rather, the Court should consider the totality of these factors in light of the particular circumstances.  *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003).

Today, however, the Court need not determine whether the Settlement should be approved. Rather, if the Court finds that the Settlement is "within the range of possible approval" that might be approved under *Grinnell*, it should then order that the Settlement Class be notified of the Settlement and given an opportunity to be heard and that the Settlement Hearing be held.  *See* §

40.42 Order Setting Hearing on Proposed Class Settlement, Manual for Complex Litigation (4th) § 40.42 (model preliminary approval order).  Here, the Settlement substantially satisfies the test announced by *Grinnell*.  The Court should, therefore, grant preliminary approval.

### 1.   The Complexity, Expense, and Likely Duration of the Litigation

"The expense and possible duration of the litigation are major factors to be considered in evaluating the reasonableness of [a] settlement."  *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984).  "[T]he more complex, expensive, and time consuming the future litigation, the more beneficial settlement becomes as a matter of efficiency to the parties and to the Court."  *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 155 (S.D.N.Y. 2013).  When applying this factor to "the settlement of a securities class action, federal courts, including this Court, 'have long recognized that such litigation is notably difficult and notoriously uncertain.'"  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 CM PED, 2010 WL 4537550, at *15 (S.D.N.Y. Nov. 8, 2010).  Courts have also acknowledged that "[s]ecurities class actions are generally complex and expensive to prosecute."  *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 CPS, 2007 WL 1191048, at *10 (E.D.N.Y. Apr. 19, 2007).  This case was no exception.

At the time the parties settled the Action, Co-Lead Counsel had, among other things, investigated the Settlement Class's claims thoroughly, successfully defeated Defendants' motions to dismiss, reviewed and analyzed 64,972 pages of documents, many of which were in Chinese, consulted with an expert consultant on damages and causation, and prepared a detailed mediation statement.   Continued litigation would have required additional, substantial expenditures of time and money, would have involved many complex issues of law and fact, and there would still exist a significant risk that the class would obtain a result far less beneficial than the one provided by the Settlement.

For example, in the absence of the Settlement, Co-Lead Counsel would have expended sizeable amounts of time and money conducting further factual discovery; conducting expert discovery; engaging in motion practice, including responding to motions for summary judgment; litigating *Daubert* motions; and proving Lead Plaintiff's claims at trial. Even if Lead Plaintiff could recover an equally large judgment after a trial – which was far from certain given the risks inherent in securities cases – the additional delay through post-trial motions and the appellate process could deny the class any recovery for years, further reducing its value. *See In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 CIV. 5173 (RPP), 2008 WL 1956267, at \*6 (S.D.N.Y. May 1, 2008); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery"); *Hicks v. Stanley*, No. 01 CIV. 10071 (RJH), 2005 WL 2757792, at \*6 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs [and] justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action.").

### 2. Stage of Proceedings

In this Action, the proceedings were sufficiently advanced to provide Plaintiffs with a thorough understanding of the strengths and weaknesses of the Settlement Class's claims. Prior to settlement, Plaintiffs conducted a substantial legal and factual investigation that served as the basis for drafting the Amended Complaint, continued the investigation after filing the Amended Complaint, litigated the motion to dismiss, retained an expert consultant, reviewed and analyzed documents IDS produced in anticipation of the mediation, and exchanged detailed mediation statements with IDS, addressing many of the issues in the case, including loss causation and

damages.  The briefing and formal mediation session, along with the Court's decision on the motion to dismiss, illuminated the relative strengths and weaknesses of the parties' positions.  *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 426 (S.D.N.Y. 2001) ("To approve a proposed settlement . . . the Court need not find that the parties have engaged in extensive discovery.  Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make . . . an appraisal of the Settlement.") (quotation marks and citations omitted).

### 3.  The Risks of Establishing Liability and Damages

There were substantial risks in prosecuting this Action, and further prosecution of this Action to trial may have yielded limited or no recovery.  Plaintiffs would have to establish falsity, materiality, scienter, loss causation and damages to a jury's satisfaction, which is notoriously difficult and risky.  *Id.*  Here, Plaintiffs would have encountered, among other hurdles, significant loss causation defenses at the summary judgment phase, as well as at trial.  Defendants would have argued that Plaintiffs would have been unable to prove that the Company's delayed release of an important video game, as opposed to other issues IDS disclosed simultaneously, actually caused their damages. This would have required Plaintiffs to disaggregate the portion of the price decline that they alleged arose from the corrective disclosures from those that pertained from other information IDS revealed at the Class Period's end.  This presented a substantial risk and success was by no means guaranteed.  *See*, *e.g.*, *Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*, 645 F. Supp. 2d 210, 228–29 (S.D.N.Y. 2009) (dismissing claims based on stock drop following press release for failure to "explain why the disclosure on page 8 – as opposed to all other information in the extended 12-page release – caused the price decline").

In addition, iDreamsky is located in China, rendering discovery difficult, at best. Not only are the Company's documents, for the most part, in Chinese, but the People's Republic of China

("PRC") erects formidable barriers both to document discovery and all but prohibits depositions in the PRC. The difficulties of establishing liability and the atypical discovery hurdles in this Action support the fairness of the Settlement.

### 4.   The Risks of Maintaining the Class Action Through Trial

While the class has not yet been certified in this case, should such a motion be granted, certification can be reviewed and modified at any time before trial.  Thus, there is always a risk that an action, or particular claims, might not be maintained as a class through trial.  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (noting that "[w]hile plaintiffs might indeed prevail [on a motion for class certification], the risk that the case might be not certified is not illusory").  Accordingly, this factor weighs in favor of the Settlement.

### 5.   Reasonableness of the Settlement Fund

The Stipulation provides for a Settlement Amount of $4.15 million to be paid into the Settlement Fund.  Plaintiffs' consultation with their expert indicated that, based on the allegations in the Amended Complaint, class-wide damages were approximately $31.9 million.  Compared to this damages estimate, the Settlement represents a fair result, returning 13% of estimated damages.  As such, the settlement falls well within the range of reasonability.  *See, e.g.*, *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (citing studies indicating that the average securities fraud class action settlement since 1995 has resulted in a recovery of 5.5%-6.2% of estimated losses); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (stating that even using the objector's damages estimates, a settlement of 14% would be fair); *Grinnell*, 495 F.2d at 455 n. 2 ("In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.").

IV.   **THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES**

A. **The Proposed Settlement Class Meets the Requirements of Rules 23(a) and 23(b)(3)**

In granting preliminary settlement approval, the Court should also certify the putative class for purposes of the Settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. The proposed Settlement Class, which has been stipulated to by the parties, consists of all Persons or entities who purchased or otherwise acquired IDS ADSs (i) pursuant and/or traceable to the Company's initial public offering on or about August 7, 2014; or (ii) on the open market between August 7, 2014 and March 13, 2015, inclusive and were allegedly damaged thereby.  Excluded from the Settlement Class are all (i) Defendants and their immediate family members; (ii) IDS's and the Underwriter Defendants' subsidiaries and affiliates; (iii) all officers and directors of IDS during the Settlement Class Period; (iv) any entities in which any Defendant has a controlling interest (but in the case of the Underwriter Defendants, only such entities that they have a majority ownership interest in); (v) the legal representatives, heirs, successors or assigns of any person excluded under sections (i) through (iii); and (vi) Opt-Outs, *i.e.*, those Persons who timely and validly request exclusion from the Settlement Class.[5]

The Second Circuit has long acknowledged the propriety of certifying a class solely for settlement purposes. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982).  Before granting preliminary approval of a class action settlement, however, the Court should determine that the

---

[5] The exclusions to the Settlement Class does not include "Investment Vehicles," which for these purposes shall mean any investment company, pooled investment fund or separately managed account (including, but not limited to, mutual fund families, exchange-traded funds, fund of funds, private equity funds, real estate funds, hedge funds, and employee benefit plans) in which any Underwriter Defendant or any of its affiliates has or may have a direct or indirect interest or as to which any Underwriter Defendant or any of its affiliates may act as an investment advisor, general partner, managing member or in other similar capacity (other than an investment vehicle of which the Underwriter Defendant or any of its affiliates is a majority owner or holds a majority beneficial interest and only to the extent of such Underwriter Defendant's or affiliate's ownership or interest).  See Stipulation ¶ 1.33.

proposed Settlement Class is a proper class for settlement purposes.  *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Manual for Complex Litigation* (Fourth) § 21.632.  To certify a class, the Court must determine whether four threshold requirements of Federal Fed. R. Civ. P. 23(a) are met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.  *Amchem*, 521 U.S. at 613.  Additionally, the action must be maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3).  *Id.* at 614.  In certifying the Settlement Class, however, the Court is not required to determine whether the action, if tried, would present intractable management problems, "for the proposal is that there be no trial."  *Id.* at 620; *see also* Fed. R. Civ. P. 23(b)(3)(D).  Here, the proposed Settlement Class meets all of the requirements of Fed. R. Civ. P. 23(a) and satisfies the requirements of Fed. R. Civ. P. 23(b)(3).

### 1.   The Settlement Class Satisfied the Requirement of Fed. R. Civ. P. 23(a)

A class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "Joinder is generally presumed to be impracticable when a putative class exceeds 40 members."  *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 90 (D. Conn. 2010) (citing *Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997)).  Impracticable does not mean impossible, but only that the difficulty or inconvenience of joining all members of the class makes use of the class action appropriate.  *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244–45 (2d Cir. 2007).

"While precise quantification of the class is not required, some evidence or a reasonable estimate of the number of class members must be provided."  *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 350–51 (E.D.N.Y. 2006) (quotations and alterations omitted).  In making this determination, "the court may make some common sense assumptions and rely on reasonable inferences drawn from the available facts."  *Id.* at 351.  Consequently, "[i]n securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement

18

may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010).  With more than 8.855 million ADSs of IDS outstanding at the end of the Settlement Class Period and an average daily trading volume of 519,883 ADSs during the Settlement Class Period, individual joinder is impracticable and the numerosity requirement is clearly satisfied.

The proposed Settlement Class also meets the commonality requirement of Fed. R. Civ. P. 23(a).  Commonality is generally easily satisfied, as it "is established so long as the plaintiffs can identify some unifying thread among the [class] members' claims." *Haddock v. Nationwide Fin. Servs., Inc.*, 262 F.R.D. 97, 116 (D. Conn. 2009).  The requirement is met "if there are questions of fact and law which are common to the class." Fed. R. Civ. P. 23(a)(2).  Securities fraud class actions are "essentially course of conduct cases because the nub of plaintiffs' claims is that material information was withheld from the entire putative class in each action, either by written or oral communication." *In re Oxford Health Plans, Inc.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000) (internal quotation marks omitted).

The typicality requirement is also satisfied.  The Second Circuit has held that the typicality requirement is met "'when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Cent. States*, 504 F.3d at 245; *In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 91 (S.D.N.Y. 2009).  The claims here satisfy the typicality requirement in that they all arise from the same false and misleading statements and require similar arguments by Settlement Class Members concerning liability.  Lead Plaintiff's claims are not only similar, but virtually identical, to those of the members of the Settlement Class.  All Settlement Class Members seek to prove that Defendants made materially false and misleading public statements during the Class Period.  As such, Lead

Plaintiff and the other Settlement Class Members have been injured by the same course of conduct by the Defendants.

Moreover, the damages that the Settlement Class seeks arise from the purchases of IDS ADS at prices that were artificially inflated as a result of Defendants' allegedly false and misleading statements, and the alleged subsequent decline in the price of IDS ADS when the truth was revealed to the market. Lead Plaintiff stands in precisely the same position as other purchasers of the Company's ADS during the Class Period. *See In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 83 (E.D.N.Y. 2002) ("[T]he element of typicality is met because the class members have been allegedly harmed by the same course of conduct (the distribution of false and misleading information which artificially inflated the stock."). Accordingly, Lead Plaintiff's claims are typical of those of the Proposed Settlement Class.

Fed. R. Civ. P. 23(a) lastly requires that the class representative "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This inquiry focuses "on uncovering 'conflicts of interest between named parties and the class they seek to represent.'" *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (quoting *Amchem*, 521 U.S. at 625). Lead Plaintiff adequately represents the Settlement Class as he has no individual interests or claims that are antagonistic to the Settlement Class and has zealously represented the Settlement Class's interests to date, including by monitoring the pleadings and authorizing Co-Lead Counsel's mediation and settlement efforts.

## 2.   The Settlement Class Satisfied the Requirements of Fed. R. Civ. P. 23(b)(3)

Finally, the proposed Settlement Class meets the requirements of Fed. R. Civ. P. 23(b)(3).

Fed. R. Civ. P. 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods of fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

To satisfy predominance, "a plaintiff must show that those issued in the proposed action that are subject to generalized proof outweigh those issues that are subject to individualized proof." *In re Salomon Analyst Metromedia Litig.*, 544 F.3d 474, 480 (2d Cir. 2008).  This inquiry "tests whether a proposed class is sufficiently cohesive to warrant adjudication by representation."  *Id.* There are questions of law and fact common to the Settlement Class that predominate over any individual questions, specifically whether Defendants' alleged actions, which were centralized and uniform, violated federal securities laws and whether those violations were knowing or reckless. These common issues predominate over any individual issues.

"Together with predominance, the superiority requirement ensures that the class will be certified only when it would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  *Menkes*, 270 F.R.D. at 100 (quoting *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007)).  Class treatment is often deemed superior in "negative value" cases, in which each individual class member's interest in the litigation is less than the anticipated cost of litigating individually.  *Menkes*, 270 F.R.D. at 100. A class action is also superior to other methods available for the fair and efficient adjudication of this controversy.  Members of the Settlement Class are not likely to prosecute, as many do not

21

have an interest or means to prosecute, and individual case against Defendants, all of which are represented by top-tier, well-staffed law firms expert in the field of securities litigation. Additionally, efficiency and economy support resolving the issues in one suit before this Court now.

### B.  The Court Should Appoint Lead Counsel as Counsel for the Settlement Class

A court that certifies a class must also appoint class counsel.  *See* Fed. R. Civ. P. 23(g). Rule 23(g) states that the adequacy of Lead Plaintiff's counsel is determined by four factors: (i) the work counsel has done in identifying or investigating potential claims; (ii) counsel's experience in handling class actions; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class.  Fed. R. Civ. P. 23(g)(1)(A).  Co-Lead Counsel Rosen and Glancy have extensive experience and stellar reputations in class actions and securities litigation.  *See* Goldberg Decl. Exs. 2, 3.  Both firms have been appointed as lead or co-lead counsel in many complex securities class actions, and have recovered substantial amounts of money for clients and class members.  Moreover, Co-Lead Counsel along with Lead Plaintiff, have vigorously protected the interests of the proposed Settlement Class in this case by, among other things, filing a detailed amended complaint that survived Defendants' motion to dismiss pursuant to the heightened pleading standards of the PSLRA.  Co-Lead Counsel will continue to commit adequate resources to ensure that the Settlement Class is properly represented in this Action as Class Counsel.

## V.   THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF CLASS NOTICE

### A.  Notice By Direct Mail and Publication Is Appropriate

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise,' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Complex Litigation* (Fourth) § 21.312.  To satisfy due process, notice to class members must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).  "'The notice must be of such nature as reasonably to convey the required information . . . and it must afford a reasonable time for those interested to make their appearance.'"  *Soberal-Perez v. Heckler*, 717 F.2d 36, 43 (2d Cir. 1983) (quoting *Mullane*, 339 U.S. at 314).  In securities class actions, it is customary to provide notice by (i) publishing a summary notice in a major publication, (ii) publishing this same summary notice in a press release, (iii) mailing long-form notice to all individual shareholders who can be found, and (iv) publishing notice on a website.  *See*, *e.g.*, *Marsh*, 265 F.R.D. at 145.

The proposed Notice, which will be published and also sent to Settlement Class Members by first class mail, is attached to the Stipulation as Exhibit B.  The Notice describes in plain English the terms of the Settlement, the considerations that led Co-Lead Counsel to conclude that the Settlement is fair and adequate, the maximum attorneys' fees award and expense reimbursement that may be sought, the procedure to object to, or request exclusion from, the Settlement, and the date and place of the Settlement Hearing.

For purposes of identifying and providing the Notice to Settlement Class Members, no later than fourteen (14) days after the date of the Preliminary Approval Order, the Company shall at no cost provide, or cause its transfer agent to provide, to Co-Lead Counsel in electronic format its list of ADSs record holders (consisting of names and addresses) during the Settlement Class Period. No later than seven (7) days after receiving the list of the record owners of ADSs during the Settlement Class Period, Co-Lead Counsel, through the Claims Administrator, shall mail the Notice and Proof of Claim to the list of record holders of ADSs.  Within twenty-one (21) days of entry of the Preliminary Approval Order, Co-Lead Counsel, through the Claims Administrator, shall cause the Notice and Proof of Claim to be mailed to all Settlement Class Members who can be identified by reasonable efforts by the Claims Administrator.  No later than fourteen (14) days after the entry of the Preliminary Approval Order, Co-Lead Counsel, through the Claims Administrator, shall post the Stipulation and its exhibits, the Preliminary Approval Order, the Notice and Proof of Claim on the Claim Administrator's website; mail requests to nominees or custodians who held ADSs during the Settlement Period as record owners, but not as beneficial owners, requesting the names of all beneficial owners of ADSs; and publish the Summary Notice on *GlobalNewswire*.  As soon as practical after receiving lists of beneficial owners from nominees and custodians, the Claims Administrator shall mail the Notice and Proof of Claim to all Settlement Class Members whom the Claims Administrator identifies by reasonable efforts.

Neither Rule 23 nor due process requires receipt of actual notice by all Settlement Class Members; rather, notice should be mailed to the last known addresses of those who can be identified and publication used to notify others.  *Newberg* § 8.04; *see also In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y. 1996) (approving proposed notice and noting that the mailing of notice to each identifiable class member's last known address is "a

procedure that has been given wide-spread approval in other class actions"), *aff'd sub nom*, *In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 107 F.3d 3 (2d Cir. 1996).  The proposed Notice, proposed Claim Form, and proposed Summary Notice to be published on *GlobalNewswire*, are attached to the Stipulation as Exhibits B, C and D, and should be approved by the Court.

### B.  The Proposed Form of Notice Adequately Informs Settlement Class Members of Their Rights in This Litigation

In an action proceeding under Fed. R. Civ. P. 23(b)(3), the notice must inform each class member that "the court will exclude anyone from the class if he so requests [by a specified date]; the judgment will include all members who do not request exclusion and any member not requesting exclusion may, if he desires, enter an appearance through counsel."  Fed. R. Civ. P. 23(c)(2).

Here, the proposed Notice, attached to the Stipulation as Exhibit B, clearly and accurately discloses the information material to a Settlement Class Member's decision whether to accept, object to, or opt out of, the Settlement.  The proposed Notice provides information on, *inter alia*, the proposed Settlement Class, the terms and provisions of the Stipulation, including the Settlement Amount; the relief to the Settlement Class and the releases to Defendants and Released Parties that the Settlement will provide; the maximum award of attorneys' fees and reimbursement of reasonable expenses to Co-Lead Counsel; the date, time and place of the final approval hearing; and the procedures and deadlines for opting out of the settlement or submitting comments or objections.

The Notice also meets the requirements of the PSLRA, 15 U.S.C. § 78u-4(a)(7).  The Notice provides:

- a cover page summarizing the information contained in the Notice;

- a statement of the Settlement Class Members' recovery, estimating a gross average recovery of \$.46 per damaged share before deduction of Court-approved fees and expenses and costs of notice and claims administration, while making clear that the Plan of Allocation will cause the actual amount recovered by a specific Settlement Class Member to vary greatly across the Settlement Class;

- the general terms of the Settlement;

- a statement of the potential outcome of the case including a statement concerning the issues on which the parties disagree;

- a statement of attorney's fees or costs sought, including a summary of this information on the cover page;

- information on how to contact the Claims Administrator and/or Co-Lead Counsel (including names, addresses, telephone numbers, and websites); and

- a discussion of the reasons for the proposed Settlement, including the factors the Parties considered in reaching the proposed Settlement.

Thus, the proposed Notice to be sent to the Settlement Class provides all of the information required by the PSLRA.  The Court should approve the proposed form of Notice and direct that notice be given to the Settlement Class as proposed by the parties.

## VI.   PROPOSED SCHEDULE OF EVENTS

Plaintiffs propose the following schedule of events leading to the Settlement Hearing as set forth in the Preliminary Approval Order filed herewith:

| Event | Proposed Timing |
| --- | --- |
| Date for Settlement Hearing (Preliminary Approval Order ¶6) | At least 100-110 days after entry of the Preliminary Approval Order, or at the Court's earliest convenience |
| Mailing of Notice and Proof of Claim (Preliminary Approval Order ¶¶13, 17) | No later than 7 days after receiving the list of the record owners during the Settlement Class Period; and within 21 days after entry of Preliminary Approval Order for Settlement Class Members who can be identified by reasonable efforts by the Claims Administrator |
| Publication of Summary Notice (Preliminary Approval Order ¶16) | No later than 14 days after the entry of the Preliminary Approval |

| | |
|---|---|
| Date to file and serve papers in support of the Settlement, the Plan of Allocation and for application for attorneys' fees and reimbursement of expenses (Preliminary Approval Order ¶¶32, 33) | 35 days prior to the Final Settlement Hearing |
| Deadline for exclusion requests (Preliminary Approval Order ¶26) | 30 days prior to the Settlement Hearing |
| Deadline for objections (Preliminary Approval Order ¶30) | 21 days prior to the Settlement Hearing |
| Date for filing reply papers (Preliminary Approval Order ¶34) | 7 days prior to the Settlement Hearing |
| Deadline for submitting Claim Forms (Preliminary Approval Order ¶24(a)) | 14 days prior to the Settlement Hearing |

## VII.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the requested relief.

Dated:  December 12, 2017

**THE ROSEN LAW FIRM, P.A.**

By: *Jacob A. Goldberg*
Jacob A. Goldberg
Keith R. Lorenze
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
T: (205) 600-2817
F: (212) 202-3827
jgoldberg@rosenlegal.com
klorenze@rosenlegal.com

**GLANCY PRONGAY**
    **& MURRAY LLP**
Joshua L. Crowell
Joseph Cohen
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
T: (310) 201-9150
F: (310) 432-1495
jcrowell@glancylaw.com
jcohen@glancylaw.com

***Co-Lead Counsel for Plaintiffs***

27

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on December 12, 2017, I electronically filed the foregoing *Plaintiffs'*

*Memorandum of Law in Support of Their Unopposed Motion for Preliminary Approval of*

*Settlement* with the Clerk of Court using the CM/ECF system, which will send notification of such

to all CM/ECF participants.

**THE ROSEN LAW FIRM, P.A.**

By: /s/ *Jacob A. Goldberg*
Jacob A. Goldberg
101 Greenwood Avenue, Suite 440
Jenkintown, PA  19046
Telephone: (215) 600-2817
Facsimile: (212) 202-3827
E-M: jgoldberg@rosenlegal.com

*Lead Counsel for Plaintiffs and the Class*

28